IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY, d/b/a MUTUAL BOILER RE, <br><br> Plaintiff, <br><br> v. <br><br> NEBRASKA BEEF, INC. and SOUTH OMAHA INVESTORS PACK, L.L.C., <br><br> Defendants. | Case No.  8:09-cv-159 |

**COMPLAINT**

For its Complaint against Nebraska Beef, Inc. and South Omaha Investors Pack, L.L.C. (collectively, "Defendants"), Mutual Boiler Re ("MBRe") states and alleges as follows:

**PARTIES**

1. MBRe is an operating division of Factory Mutual Insurance Company, a Rhode Island corporation in the business of selling insurance policies, with its principal place of business located in Johnson, Rhode Island. MBRe provides insurance coverage, including equipment breakdown insurance, for clients such as the Defendants. At all times pertinent hereto, MBRe was authorized to provide insurance in the State of Nebraska and elsewhere.

2. Nebraska Beef, Inc. ("Nebraska Beef") is a Nebraska corporation with its principal place of business located at 4501 S. 36th Street, Omaha, Nebraska 68107, and its principal office address is listed with the Nebraska Secretary of State at 9227 Brentwood Rd., Omaha, Nebraska 98114. Nebraska Beef is a major producer and processor of beef, supplying varying cuts of meat to consumers in the United States and abroad.

3. South Omaha Investors Pack, L.L.C. ("SOIP") is a Nebraska limited liability company with its principal place of business located at 4501 S. 36th Street, Omaha, Nebraska 68107. On information and belief, SOIP is the owner of building(s) in which Nebraska Beef conducts its business operations.

## JURISDICTION AND VENUE

4.Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332. Diversity Jurisdiction applies in this suit because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between the MBRe and the Defendants.

5.Venue is proper in this Court because Nebraska Beef and SOIP conduct business in Omaha, Nebraska, and because the majority of the properties insured under the insurance policies in issue are located in Omaha, Nebraska.

## STATEMENT OF FACTS

6.This case arises out of insurance policies issued by MBRe providing coverage to Nebraska Beef and SOIP for direct physical loss or damage to certain property caused by an "Equipment Breakdown" as defined in each Policy, subject to Policy terms and conditions. Nebraska Beef and SOIP failed to provide timely notice of loss as required under the Policies, and MBRe was permanently deprived of its right to investigate the equipment and other property allegedly suffering and/or damaged by the purported Equipment Breakdowns. Nebraska Beef and SOIP also made material misrepresentations on applications for renewal of the Policies by failing to list the losses on which Nebraska Beef and SOIP provided fatally-deficient notice.

7.Brooke Insurance & Financial Service ("Brooke") is a company located in Kansas City, Kansas, that deals with the insurance needs of its clients. Among other things, Brooke's personnel act as insurance brokers for various clients in various states and industries, including Nebraska Beef and SOIP.

8.Power Group Risk Services, LLC ("Power Group") is a limited liability company located at 12721 Metcalf Avenue, Kansas City, Kansas 66213. Among other things, Power Group acquired certain employees and accounts from Brooke, and its personnel act as insurance brokers for various clients in various states and industries, including Nebraska Beef and SOIP.

### Nebraska Beef Searches for an Alternative Policy and Purchases the MBRe Policy

9.In early 2007, Nebraska Beef had an equipment breakdown insurance policy through Chubb Insurance Company ("Chubb").

10.Due, at least in part, to claims Nebraska Beef submitted under its Chubb policy, Chubb provided Nebraska Beef with a notice of nonrenewal.

11.Around the same time Nebraska Beef received the Chubb notice of nonrenewal, Nebraska Beef's insurance Brokers collected information from alternative insurance companies, including MBRe. On information and belief, other companies that

submitted insurance proposals included Chubb, Hartford Steam Boiler, Travelers and CNA.

12. After providing Nebraska Beef with notice that it would not renew Nebraska Beef's Chubb policy, Chubb in fact provided a proposal that included different terms, including higher premiums.

13. Brooke personnel presented some of the proposals from those insurance companies to Nebraska Beef, including the proposals submitted by MBRe and Chubb.

14. From those proposals, Nebraska Beef ultimately purchased one Policy at issue from MBRe, Policy No. PN791 ("Policy"). MBRe attaches a true and correct copy of the Policy as **Exhibit A**.[1]

15. MBRe and Nebraska Beef intended that the Policy would govern their relationship and determine under what circumstances physical loss or damage to property was covered. MBRe and SOIP had the same intention relating to their policy.

16. Specifically, the Policy states:

A. Loss Conditions
   1. Duties in the Event of Loss or Damage - You must see that the following are done in the event of loss or damage:
    a. Provide us immediate written notice of the loss or damage. Immediate, as used here, means: within 72 hours. Include a description of the property involved;
    b. As soon as possible, provide us a description of how, when and where the loss or damage occurred;
    c. Allow us a reasonable time and opportunity to examine the property and premises before repairs are undertaken or physical evidence of the "Equipment Breakdown" is removed. You must take whatever measures are necessary for protection from further damage;

Exhibit A at FM/NBI POLICY 000023.

17. The Policy also states:

Concealment, Misrepresentation or Fraud – This Policy is void in any case of fraud by you relating to it. It is also void if you intentionally conceal or misrepresent a material fact concerning:

a. This Policy;

---

[1] SOIP purchased the other Policy at issue from MBRe, Policy No. PN790. For the purposes of this Complaint, the two policies at issue are identical. MBRe therefore does not attach a copy of the SOIP policy, but will do so upon request.

  b. The Covered Property;

  c. Your interest in the Covered Property.

Exhibit A at FM/NBI POLICY 000033.

**Nebraska Beef Incurs Four Separate and Distinct Losses**

  18. On or around June 14, 2008, Nebraska Beef's operations were interrupted due to a power outage at Nebraska Beef's plant ("June 14 loss").

  19. Upon information and belief, Nebraska Beef provided verbal notice of the June 14 loss to its insurance Broker's employee, Mr. Gene Moyer, at Brooke on or around June 14, 2008, and in any event, within the time provided in the Policy.

  20. Mr. Moyer advised another Brooke employee, Ms. Tracy Armstrong, who was responsible for providing written notice of the June 14 loss to MBRe.

  21. For reasons unknown to MBRe, Nebraska Beef, or Nebraska Beef's insurance Broker, Ms. Armstrong failed to provide notice of the June 14 loss to MBRe.

  22. As part of completing the repairs necessary to continue its operations, Nebraska Beef repaired and disposed of its damaged equipment and property without providing MBRe its contractual right to inspect the same.

  23. Nebraska Beef's operations were reinstated from the June 14 loss on or around June 16, 2008.

  24. Nebraska Beef ultimately determined that the June 14 loss amounted to approximately $1,569,371.78.

  25. On or around June 17, 2008, Nebraska Beef's operations were interrupted due to a power outage at Nebraska Beef's plant ("June 17 loss") that was substantially similar to the June 14 loss.

  26. Upon information and belief, Nebraska Beef provided verbal notice of the June 17 loss to its insurance Broker's employee, Mr. Gene Moyer, at Brooke on or around June 17, 2008, and in any event, within the time provided in the Policy.

  27. Mr. Moyer advised another Brooke employee, Ms. Tracy Armstrong, who was responsible for providing written notice of the June 17 loss to MBRe.

  28. For reasons unknown to MBRe, Nebraska Beef, or Nebraska Beef's insurance Broker, Ms. Armstrong failed to provide notice of the June 17 loss to MBRe.

  29. As part of completing the repairs necessary to continue its operations, Nebraska Beef repaired and disposed of its damaged equipment and property without providing MBRe its contractual right to inspect the same.

30. Nebraska Beef's operations were reinstated from the June 17 loss on or around June 18, 2008.

31. Nebraska Beef ultimately determined that the June 17 loss amounted to approximately $957,026.39.

32. On or around June 27, 2008, Nebraska Beef's operations were interrupted due to a power outage at Nebraska Beef's plant ("June 27 loss") that was presumably caused by a tornado in the vicinity of Omaha.[2]

33. Upon information and belief, Nebraska Beef provided verbal notice of the June 27 loss to its insurance Broker's employee, Mr. Gene Moyer, at Brooke on or around June 28, 2008, and in any event, within the time provided in the Policy.

34. Mr. Moyer advised another Brooke employee, Ms. Tracy Armstrong, who was responsible for providing written notice of the July 17 loss to MBRe.

35. For reasons unknown to MBRe, Nebraska Beef, or Nebraska Beef's insurance Broker, Ms. Armstrong failed to provide notice of the June 27 loss to MBRe.

36. As part of completing the repairs necessary to continue its operations, Nebraska Beef repaired and disposed of its damaged equipment and property without providing MBRe its contractual right to inspect the same.

37. Nebraska Beef's operations were reinstated from the June 27 loss on or around June 30, 2008.

38. Nebraska Beef ultimately determined that the June 27 loss amounted to approximately $1,968,553.15.

39. On or around July 17, 2008, Nebraska Beef's operations were interrupted due to a power outage at Nebraska Beef's plant ("July 17 loss") resulting from arcing of a circuit breaker.

40. Upon information and belief, Nebraska Beef provided verbal notice of the July 17 loss to its insurance Broker, Mr. Gene Moyer, at Brooke on or around July 17, 2008, and in any event, within the time provided in the Policy.

41. Mr. Moyer advised another Brooke employee, Ms. Tracy Armstrong, who was responsible for providing written notice to MBRe.

42. For reasons unknown to MBRe, Nebraska Beef, or Nebraska Beef's insurance Brokers, Ms. Armstrong failed to provide notice of the July 17 loss to MBRe.

---

[2] Upon information and belief, and due to the cause of the power outage, Nebraska Beef also submitted a claim for the June 27 loss to another insurance company, which has provided at least partial coverage for the June 27 loss. In an abundance of caution, MBRe includes the June 27 loss in this action to protect itself from any remaining claims for the same loss.

43. As part of completing the repairs necessary to continue its operations, Nebraska Beef repaired and disposed of its damaged equipment and property without providing MBRe its contractual right to inspect the same.

44. Nebraska Beef's operations were reinstated from the July 17 loss on or around July 19, 2008.

45. Nebraska Beef ultimately determined that the July 17 loss amounted to approximately $1,917,534.27.

## Nebraska Beef and SOIP Misrepresented Lack of Losses to Procure Renewed Policies

46. According to the Policy's terms, it expired on September 25, 2008. SOIP's policy expired on the same date.

47. As a normal course of the Brokers' business, they contacted Nebraska Beef and SOIP regarding renewal of the policies.

48. Part of that renewal process was confirming the values for which Nebraska Beef and SOIP required coverage.

49. Nebraska Beef's insurance Broker provided the renewal application to MBRe by email on August 7, 2008. MBRe attaches a true and correct copy of that application as **Exhibit B**.

50. Nebraska Beef's renewal application included the values the Brokers confirmed with its insured. Exhibit B at FM/NB UW 000018-20.

51. That same application, however, did not include any reference to losses Nebraska Beef had sustained in the months of June and July, 2008, despite the fact that the application contained two sections in which Nebraska Beef should have listed those losses. Exhibit B at FM/NB UW 000013-14.

52. By the time Nebraska Beef submitted its application for renewal of the Policy, more than seven weeks had passed since its June 14 loss, and three weeks had passed since its July 17 loss. See date of Exhibit B compared to respective dates of the June 14 loss, June 17 loss and July 17 loss.

53. Also, at the time Nebraska Beef submitted its application for renewal, MBRe had not received notice of any losses Nebraska Beef sustained in June or July 2008.

54. MBRe renewed the Nebraska Beef and SOIP policies, which renewed policies covered the period between September 25, 2008 and September 25, 2009.

## Defendants Finally Provided MBRe Notice of the Losses in Late October, 2008

55. On or around October 23, 2008, MBRe received, for the first time, verbal notice of Nebraska Beef's July 17 loss.

56. Nebraska Beef's insurance Broker's employee, Gene Moyer, received notice from Nebraska Beef's Public Adjuster ("PA") that MBRe had not been provided notice as required by the Policy.

57. In an attempt to remedy that lack of notice, Gene Moyer sent a facsimile to MBRe dated November 6, 2008. MBRe attaches a true and correct copy of that facsimile as **Exhibit C**.

58. That same facsimile includes a typed reference to Nebraska Beef's Policy, and a handwritten reference to SOIP's policy. Exhibit C at p. 2.

59. While Mr. Moyer's facsimile listed both the Nebraska Beef Policy and the SOIP policy on the loss notice, it listed only the July 17 loss. *Id.*

60. Mr. Moyer's facsimile made no reference to the June 14 loss, the June 17 loss or the June 27 loss - despite the fact that those losses had been sustained long before the July 17 loss. *Id.*

61. Nebraska Beef provided verbal notice of the June 14 loss, the June 17 loss and the June 27 loss to MBRe on or around November 18, 2008.

62. On November 20, 2008, MBRe confirmed receipt of notice of the June 14 loss, June 17 loss, June 27 loss and July 17 loss ("Losses") in separate letters to Nebraska Beef.[3] MBRe attaches true and correct copies of those letters as **Exhibit D**.[4]

63. MBRe advised Nebraska Beef of a certain "question whether coverage under this policy applies to this occurrence," citing:

   A. Loss Conditions
      1. Duties in the Event of Loss or Damage - You must see that the following are done in the event of loss or damage:
         a. Provide us immediate written notice of the loss or damage. Immediate, as used here, means: within 72 hours. Include a description of the property involved;
         ...

---

[3] During MBRe's investigation into the Losses, it became clear that Nebraska Beef and SOIP were, for the purposes of the claims submitted by both Defendants, identical. That fact was later confirmed in the Nebraska Beef examinations under oath. In an abundance of caution, MBRe brings this action against both Defendants to protect itself from future claims that contradict the Defendants' position to date.

[4] MBRe sent a substantially similar letter to SOIP regarding the claims submitted for the same losses under SOIP's policy. For the purposes of this Complaint, MBRe's letter to SOIP contained the same quoted language as MBRe's letters to Nebraska Beef.

    c. Allow us a reasonable time and opportunity to examine the property and premises before repairs are undertaken or physical evidence of the "Equipment Breakdown" is removed. You must take whatever measures are necessary for protection from further damage;

Exhibit D.

64. MBRe submitted questions regarding the Losses to Nebraska Beef as part of its continued investigation, despite the question it had regarding coverage listed above. MBRe and Nebraska Beef communicated regarding these questions between December, 2008 and February, 2009.

65. On February 18, 2009, Nebraska Beef sat for an examination under oath ("EUO") pursuant to the terms and conditions of its Policy, through its President, Bill Hughes, in Omaha, Nebraska.

66. Mr. Hughes was unable to respond to certain questions that related to Nebraska Beef's insurance policies and positions, which Nebraska Beef indicated would be more appropriately addressed to Marvin Schreck (the individual to whom MBRe had sent letters requesting the EUO).

67. On April 1, 2009, Nebraska Beef sat for another EUO pursuant to the terms and conditions of the Policy, this time through Marvin Schreck, Nebraska Beef's insurance representative, again in Omaha, Nebraska.

68. Two days later, on April 3, 2009, Nebraska Beef's insurance Brokers sat for a voluntary EUO, through Gene Moyer and Julie Plummer, in Kansas City, Kansas.

69. After finalizing its investigation into the above facts, MBRe sent Nebraska Beef and SOIP letters denying coverage and rescinding the renewed policies procured through misrepresentations and fraudulent statements.

70. With its rescission letters, MBRe reimbursed Nebraska Beef and SOIP the entire premiums paid for those renewed policies.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment Regarding Coverage)

71. MBRe restates and incorporates by this reference the allegations contained in paragraphs 1 through 70 of this Complaint.

72. MBRe seeks declaratory relief, pursuant to the Nebraska Uniform Declaratory Judgments Act, Neb. Rev. St. § 25-21, 149, et seq., and Rule 57 of the Federal Rules of Civil Procedure, on the following points:

    a. Nebraska Beef and SOIP failed to provide the required immediate written notice of losses sustained on June 14, 2008, June 17, 2008, June 27, 2008 and July 17, 2008;

  b. MBRe was prejudiced because, among other things, it was deprived of its contractual right to investigate the losses and examine Nebraska Beef's and SOIP's damaged equipment and property;

  c. The lack of timely written notice constitutes a breach of the insurance policies, which breach obviates coverage for the losses sustained on June 14, 2008, June 17, 2008, June 27, 2008 and July 17, 2008.

 73. In requesting this declaratory relief, MBRe is requesting an interpretation of the rights, legal status and relationships of the parties under the policies and as to which there is currently a dispute.

 74. Such interpretation is appropriate under the provisions of the Uniform Declaratory Judgments Act, Neb. Rev. St. § 25-21, 149, et seq., and Rule 57 of the Federal Rules of Civil Procedure.

 75. MBRe requests that this Court determine the rights, status or other legal relations of the parties, and to award all other relief to which MBRe may be entitled.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Regarding Policy Rescission)

 76. MBRe restates and incorporates by this reference the allegations contained in paragraphs 1 through 75 of this Complaint.

 77. MBRe seeks declaratory relief, pursuant to the Nebraska Uniform Declaratory Judgments Act, Neb. Rev. St. § 25-21, 149, et seq., and Rule 57 of the Federal Rules of Civil Procedure, on the following points:

  a. Nebraska Beef's and SOIP's renewal applications contained material misrepresentations and fraudulent statements when they failed to include the losses sustained on June 14, 2008, June 17, 2008, June 27, 2008 and July 17, 2008, of which Nebraska Beef and SOIP were aware at the time the applications were submitted;

  b. MBRe justifiably relied on those material misrepresentations and fraudulent statements to its detriment in deciding to renew Nebraska Beef's and SOIP's policies covering the period between September 25, 2008 and September 25, 2009;

  c. MBRe would not have renewed the Nebraska Beef or SOIP policies if it was aware of the fact that four losses, totaling more than $6,400,000, had been incurred during the previous policy term;

  d. Accordingly, MBRe properly rescinded the renewed policies with Nebraska Beef and SOIP covering the period between September 25, 2008 and September 25, 2009.

78. In requesting this declaratory relief, MBRe is requesting an interpretation of the rights, legal status and relationships of the parties under the policies and as to which there is currently a dispute.

79. Such interpretation is appropriate under the provisions of the Uniform Declaratory Judgments Act, Neb. Rev. St. § 25-21, 149, et seq., and Rule 57 of the Federal Rules of Civil Procedure.

80. MBRe requests that this Court determine the rights, status or other legal relations of the parties, and to award all other relief to which MBRe may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Mutual Boiler Re respectfully requests that the Court find as follows regarding the relationship between Mutual Boiler Re and Nebraska Beef and the relationship between Mutual Boiler Re and SOIP:

A. That Mutual Boiler Re was entitled to deny coverage under Nebraska Beef's and SOIP's insurance policies as they relate to the June 14, 2008 loss;

B. That Mutual Boiler Re was entitled to deny coverage under Nebraska Beef's and SOIP's insurance policies as they relate to the June 17, 2008 loss;

C. That Mutual Boiler Re was entitled to deny coverage under Nebraska Beef's and SOIP's insurance policies as they relate to the June 27, 2008 loss;

D. That Mutual Boiler Re was entitled to deny coverage under Nebraska Beef's and SOIP's insurance policies as they relate to the July 17, 2008 loss;

E. That Mutual Boiler Re was entitled to rescind Nebraska Beef's and SOIP's continued coverage under the renewed insurance policies by explaining the grounds for rescission and returning the premiums paid to Mutual Boiler Re.

Dated this 7th day of May, 2009.

                        Respectfully submitted,

                        YATES LAW FIRM, LLC

                        By: /s/ Dart M. Winkler
                        Russell E. Yates
                        Dart M. Winkler
                        1900 Wazee Street, Suite 203
                        Denver, CO 80202
                        Telephone: (303) 722-2810
                        Facsimile: (303) 722-2890

                        ATTORNEYS FOR FACTORY MUTUAL INSURANCE COMPANY, d/b/a MUTUAL BOILER RE

Plaintiff's Address:
1301 Atwood Avenue
PO Box 7500
Johnson, RI 02919