



# EQUIPMENT ADVANTAGE

## EQUIPMENT BREAKDOWN INSURANCE POLICY
## DECLARATIONS

| **Named Insured** | **Policy Number** | **Effective/ Expiration Date** |
|---|---|---|
| Nebraska Beef Inc. | PN791 | 09/25/2007 - 09/25/2008 |

**Mailing Address:** 4501 S. 36th Street, Omaha, NE, 68107

**Covered Locations:** See form 774-6

**I.**  Coverage Description: **Equipment Breakdown**
Provided by: Factory Mutual Insurance Company, 1301 Atwood Ave., Johnston, Rhode Island (800) 814-4458

**II.**  **Limits of Insurance**

| | | |
|---|---|---|
| A. | Property Damage.................................................................. | $35,000,000 |
| B. | Business Interruption and or Extra Expense and or | |
| | Utility Service Interruption................................................. | $42,985,000 |
| | Extended Period of Interruption........................................... | 5 Days |
| C. | Expediting Expenses............................................................. | $100,000 |
| D. | a. Spoilage and or Contamination........................................ | $See Endorsement # 774-8 |
| | b. Spoilage and or Contamination-Property of Others.............. | No Coverage |
| E. | Hazardous Material............................................................... | $100,000 |
| F. | Demolition and Increased Cost of Construction........................... | $500,000 |
| G. | Water Damage...................................................................... | $100,000 |
| H. | Fungus, Wet Rot, Dry Rot and or Bacteria............................... | $25,000 |
| I. | Media or Data...................................................................... | $25,000 |

**III.**  **Deductibles**

| | | |
|---|---|---|
| A. | Property Damage.................................................................. | $25,000 |
| B. | Business Interruption and or Extra Expense and or | |
| | Utility Service Interruption................................................. | 24 Hours |
| C. | Spoilage and or Contamination.............................................. | 10% of Loss with a Minimum of $50,000 |

**IV.**  **Waiting Periods**

| | | |
|---|---|---|
| A. | Utility Service Interruption.................................................. | 24 Hours |
| B. | Spoilage and or Contamination.............................................. | 24 Hours |

**V.**  **Forms Attached to this Policy**
1097-28; 1097-6; 1027-7; 701-14; 774-6; 774-8



EXHIBIT

Term Premium: $105,417

Authorized Signature _____

Countersigned (if required) at _____ by _____ Agent

710-5 Ed.9/05                                    PAGE 1 OF 1

FM/NBI POLICY 000002

 # EQUIPMENT ADVANTAGE

## ORDINARY PAYROLL COVERAGE

This Endorsement changes the insurance provided under this policy.

It is understood and agreed that the following changes are made to this policy:

Item :

**B. Business Interruption and or Extra Expense and or Utility Service Interruption**

2. a. Salaries and wages of officers, executives, employees under contract and other essential employees, as well as pensions and directors' fees but not including ordinary payroll expense;

is hereby deleted in its entirety and replaced by the following:

**B. Business Interruption and or Extra Expense and or Utility Service Interruption**

2. a. Salaries and wages of officers, executives, employees under contract and other essential employees, as well as pensions and directors' fees including ordinary payroll expense;

**FACTORY MUTUAL INSURANCE COMPANY**
1027-7 Ed. 9/05                                              PAGE 1 OF 1

FM/NBI POLICY 000004

 # EQUIPMENT ADVANTAGE

The **Covered Locations** section of the Declarations of this policy is completed as follows:

**Location Address**

1. 4501 S. 36th Street, Omaha, NE 68107

2. 3508 1/2 Dahlman Avenue, Omaha, NE 68107

3. 2523 Gomez, Omaha, NE 68107

4. 10 Lakeside Lane, Denver, CO 80212

5. 7070 S. 107th , La Vista, NE 68128

6. 3301 G Street, Omaha, NE 68107

7. 4502-4504 S. 36th, Omaha, NE 68107

8. 4518 S. 35th , Omaha, NE 68107

9. 2505 N. 24th, Omaha, NE 68110

10. 4410 S. 36th , Omaha, NE 68107

11. 4600 E. 36th, Omaha, NE 68107

12. 2405 Z Street, Omaha, NE 68107

13. 10711 Olive Street, Omaha, NE 68107

*several different loss locations on policy. Not sure which one applies to this claim.*

**FACTORY MUTUAL INSURANCE COMPANY**
Form 774-6 Ed. 9/05                              Page 1 of 1

FM/NBI POLICY 000006



# EQUIPMENT ADVANTAGE

## Amendment of Spoilage and or Contamination Coverage

Item D.a. Spoilage and or Contamination of the declaration is completed as follows:
Various limits apply per the schedule below

| Locations | Limit of Insurance |
|---|---|
| **4501 S. 36th Street** | $ 6,500,000 |
| **2523 Gomez** | $ 500,000 |
| **7070 S. 107th** | $ 1,000,000 |
| **3301 G. Street** | $ 500,000 |
| **2505 N. 24th** | $ 500,000 |
| **10711 Oliver Street** | $ 150,000 |
| **All Other Locations** | $ 100,000 |

*Two placement*
*Arch Re -*
*Gen Re -*

**FACTORY MUTUAL INSURANCE COMPANY**
Form 774-8 Ed. 9/05                     PAGE 1 OF 1

   **EQUIPMENT ADVANTAGE**

**FACTORY MUTUAL INSURANCE COMPANY**
Form 774-8 Ed. 9/05                    PAGE 2 OF 2

FM/NBI POLICY 000008



# EQUIPMENT ADVANTAGE

## EQUIPMENT BREAKDOWN INSURANCE POLICY

| **Named Insured** | **Policy Number** | **Effective/ Expiration Date** |
|---|---|---|
| Nebraska Beef Inc. | PN791 | 09/25/2007 - 09/25/2008 |

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown on the Declarations. The words "we," "us" and "our" refer to the Company identified on the Declarations, which is providing the insurance.  Other words and phrases that appear in quotation marks have special meaning.  Refer to Section VIII – DEFINITIONS.

**Various provisions in this Policy restrict coverage.  Read the entire Policy carefully to determine conditions, rights, duties and what is and is not covered.**

**INSURING AGREEMENT:**  In consideration of the premium paid and of conditions and other terms of this Policy, we will insure you to the extent of your interest in covered property from the inception date to the expiration date indicated on the Declaration Page, both dates to commence at 12:01 A.M. local time at the location of the property involved as provided in this Policy, for an amount in excess of the deductible(s), but not to exceed the Limits of Insurance specified on the Declaration Page.

In witness, the Company has caused this Policy to be signed by its duly authorized representative and countersigned (if required) on the Declaration Page by a licensed agent.

Non-Assessable Policy – This Policy is non-assessable and non-participating.  Accepting this Policy does not entitle you to membership in the Company.



/s/_____

John P. Pomeroy, Secretary
Factory Mutual Insurance Company

/s/_____

Shivan S. Subramaniam, Chairman and CEO
Factory Mutual Insurance Company

701-14   Ed. 9/05                    Page 1 of 16

FM/NBI POLICY 000010

## I.  COVERAGES AND LIMITS

### A.   Property Damage

We will pay for:

1. Direct physical loss or damage to Covered Property, caused by an "Equipment Breakdown" to "Covered Equipment" at the "Location(s)" specified in this Policy.

2. Covered Property as used in this Policy, means any property:

   a.  You own; or

b.   Of others that is in your care, custody or control and for which you are legally liable.  In addition to paying for loss to this property, we
will defend you against that part of any claim or suit or arbitration alleging your liability for damage to this property, subject to the
Defense and Supplementary Payments provisions.

Covered Property does NOT mean:

a.   Land, water, or any substance in or on land, pavement and roadways, trees, shrubs, plants, lawns, growing crops or standing timber;

b.   Currency, money, notes, securities, accounts, bills, tickets, tokens, evidences of debt, valuable papers and records or fine arts; or

c.   Animals.

The most we will pay for direct Property Damage resulting from any "One Equipment Breakdown" is the amount shown in the Limits of       Insurance on the Declaration Page of this Policy.

### B.  Business Interruption, Extra Expense, Utility Service Interruption

We will pay for your actual loss sustained of the following occurring during the "Period of Interruption":

1. The sum of the net profits your business fails to earn because of business interruption resulting solely from an "Equipment Breakdown"; and

2. Whatever part of the following fixed charges and expenses your business failed to earn but would have earned if there had been no "Equipment Breakdown";

   a.  Salaries and wages of officers, executives, employees under contract and other essential employees, as well as pensions and directors' fees but not including ordinary payroll expense;

   b.  Manufacturing, selling, administrative expenses and any other items contributing to your overhead expenses, plus

3. The difference between the cost you necessarily incur to operate your business in as normal a manner as possible during the "Period of Interruption" caused by an "Equipment Breakdown"

and what the cost of operating it would have been had no "Equipment Breakdown" occurred.

All caused solely by an "Equipment Breakdown" to "Covered Equipment".

701-14   Ed. 9/05                     Page 2 of 16

FM/NBI POLICY 000012

This coverage section also includes the actual loss sustained and extra expense of the items 1, 2, and 3 above when caused solely by an "Equipment Breakdown" to any equipment that is located on, or within 1,000 feet of, your "Location"; and meets the definition of "Covered Equipment" except that it is owned by the building owner at your "Location," or owned by a public utility company; and used to supply telephone, electricity, air conditioning, refrigeration, heating, gas, sewer, water or steam services to your "Location";

and when the "Period of Utility Service Interruption" to the specified service(s) is in excess of the time shown in the "Waiting Period" on the Declaration Page of this Policy.

The most we will pay for any Business Interruption, Extra Expense, Utility Service Interruption whether applying separately or in combination, resulting from any "One Equipment Breakdown" is equal to the amount shown in the Limits of Insurance on the Declaration Page of this Policy.

### C. Expediting Expenses

With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

1. Make temporary repairs;
2. Expedite permanent repairs;
3. Expedite permanent replacement.

As used here, reasonable extra cost shall mean the extra cost of temporary repair and of expediting the repair of your damaged property, including overtime and the extra cost of express or other rapid means of transportation.

The most we will pay for Expediting Expenses will be the amount shown in the Limits of Insurance on the Declaration Page of this Policy.  This limit is part of and not in addition to the limit shown for Property Damage on the Declaration Page of this Policy.

### D. Spoilage and or Contamination

1. We will pay for loss of perishable goods due to spoilage resulting from the lack or excess of power, light, heat, steam or refrigeration caused solely by an "Equipment Breakdown" to "Covered Equipment".

   We will also pay for such spoilage loss when resulting from an "Equipment Breakdown" to any equipment that is located on, or within 1,000 feet of, your "Location"; and meets the definition of "Covered Equipment" except that it is owned by the building owner at your "Location," or owned by a public utility company; and used to supply telephone, electricity, air conditioning, refrigeration, heating, gas, sewer, water or steam services to your "Location;"

   and when the "Period of Utility Service Interruption" to the specified service(s) is in excess of the time shown in the Waiting Period on the Declaration Page of this Policy.

2. We will pay for loss of perishable goods due to contamination by a refrigerant caused solely by an "Equipment Breakdown" to "Covered Equipment."

The most we will pay for loss due to Spoilage and or Contamination will be the amount shown in the Limits of Insurance on the Declaration Page of this Policy.  This limit is a Combined Limit for all loss or damage resulting from Spoilage and or Contamination.  This limit is part of and not in addition to the limits shown for Property Damage and Business Interruption, Extra Expense, Utility Service Interruption on the Declaration Page of this Policy.

The most we will pay for your liability for property of others spoiled and or contaminated will be the amount shown in the Limits of Insurance on the Declaration Page of this Policy.  This limit is part of and not in addition to the limit shown for Spoilage and or Contamination on the Declaration Page of this Policy.

701-14   Ed. 9/05                        Page 3 of 16

FM/NBI POLICY 000014

**E.   Hazardous Material**

The following applies despite any Ordinance or Law Exclusion.  This coverage does not apply to damage or contamination caused by any refrigerant including ammonia.

If Covered Property is damaged, contaminated or polluted as a result of an "Equipment Breakdown" "to Covered Equipment" by a substance declared to be hazardous to health by a governmental agency, the most we will pay, including salvage expense, for any additional expenses incurred by you for clean up, repair or replacement or disposal of that property will be the amount shown on the Declaration Page of this Policy.  As used here, additional expenses mean expenses incurred beyond those for which we would be liable if no substance hazardous to health had been involved.

This limit is part of and not in addition to the limit shown for Property Damage on the Declaration Page of this Policy.  We will not pay for additional loss or expense under Business Interruption, Extra Expense, Utility Service Interruption caused by any increase in the "Period of Interruption" resulting from the presence of a Hazardous Substance.

**F.   Demolition and Increased Cost of Construction**

If buildings or structures are damaged as a direct result of an "Equipment Breakdown" to "Covered Equipment," and the loss or damage is increased by the enforcement of any ordinance or law in effect at the time of the "Equipment Breakdown" that regulates the repair or reconstruction of the buildings or structures, we will pay your reasonable and necessary costs to comply with the minimum requirements of these laws or ordinances as listed below:

1.   Your actual cost to demolish the undamaged buildings or structures;
2.   Your actual increase in costs to repair, reconstruct or rebuild the buildings or structures;
3.   Any increase in the "Period of Interruption" caused by compliance with the ordinances or laws.

We will not pay for any increase in loss or costs until the buildings or structures are actually repaired, replaced, or reconstructed.  This coverage does not cover loss or damage due to any ordinance or law with which you were required to comply had the loss not occurred.  Further, this coverage excludes any costs incurred as a direct or indirect result of enforcement of any ordinances or laws regulating any form of contamination including but not limited to the presence of pollution or hazardous material.

The most we will pay for Demolition and Increased Cost of Construction will be the amount shown in the Limits of Insurance on the Declaration Page of this Policy.  This limit is part of and not in addition to the limits shown for Property Damage and Business Interruption, Extra Expense, Utility Service Interruption on the Declaration Page of this Policy.

**G.   Water Damage**

If Covered Property is damaged by water as a direct result of an "Equipment Breakdown" to "Covered Equipment," the most we will pay for this kind of damage, including salvage expense, will be the amount shown in the Limits of Insurance on the Declaration Page of this Policy.  This limit is part of and not in addition to the limit shown for Property Damage on the Declaration Page of this Policy.  We will not pay for additional loss or expense under Business Interruption, Extra Expense, Utility Service Interruption caused by any increase in the "Period of Interruption" resulting from the presence of Water Damage.

**H.   "Fungus, Wet Rot, Dry Rot and or Bacteria"**

If Covered Property is damaged by "Fungus, Wet Rot, Dry Rot and Bacteria" as a direct result of

an "Equipment Breakdown to "Covered Equipment," the most we will pay for this kind of damage, including salvage expense, will be the amount shown in the Limits of Insurance on the Declaration Page of the Policy. This limit is part of and not in addition to the limits shown for Property Damage and Business Interruption, Extra Expense, Utility Service Interruption on the Declaration Page of this Policy.  This provision does not apply to coverage provided by the Spoilage and or Contamination section of this Policy.

701-14   Ed. 9/05                    Page 4 of 16

I.   **"Media" or "Data"**

If "Media" is damaged by an "Equipment Breakdown," to "Covered Equipment" we will pay for your cost to research, replace, restore all forms of electronic and magnetic tapes and disks and "data" and the costs to reprogram instructions for use in any covered electronic computer or electronic data processing equipment.

We will not pay to reproduce:

1.   Software programs or operating systems that are not commercially available; or
2.   "Data" that is obsolete, unnecessary or useless to you.

The most we will pay for "Media" or "Data" whether applying separately or in combination, resulting from any "One Equipment Breakdown, will be the amount shown in the Limits of Insurance on the Declaration Page of this Policy.  This limit is part of and not in addition to the limits shown for Property Damage and Business Interruption, Extra Expense, Utility Service Interruption on the Declaration Page of this Policy.

## II. DEFENSE

A.   If there is damage to Covered Property of others in your care, custody or control and for which you are legally liable, that was directly caused by an "Equipment Breakdown" to "Covered Equipment," we will have the right and duty to defend and or represent you against any suit or arbitration alleging liability for damage to that property.  However, we have no duty to defend and or represent you against any suit or arbitration alleging liability for damage to property not covered by this Policy.

B.   If a claim, suit or arbitration is brought against you alleging that you are liable for damage to property of another, that was caused by an "Equipment Breakdown" to "Covered Equipment," we will either:

1.   Settle the claim, suit or arbitration,  or
2.   Defend you against that part of any suit or arbitration while keeping for ourselves at any time the right to settle.

## III. SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim or any suit or arbitration in which we defend and or represent you:

A.   All expenses we incur;

B.   The cost of bonds to release attachments, but only for bond amounts within the available Property Damage Limits of Insurance.  We do not have to furnish these bonds;

C.   All reasonable expenses incurred by you at our request to assist us in the investigation, representation or defense of the claim or suit or arbitration, including actual loss of earnings up to $250 a day because of time off from work;

D.   All costs taxed against you in any legal proceeding defended or represented by us;

E.   Pre-judgment interest awarded against you on that part of the judgment we pay.  If we make an

offer to pay the available Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

F.   All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the available Limits of Insurance for Property Damage shown on the Declaration Page of this Policy.

701-14   Ed. 9/05                     Page 5 of 16

FM/NBI POLICY 000018

## IV. AUTOMATIC COVERAGE FOR A NEWLY ACQUIRED LOCATION

We will automatically cover an "Equipment Breakdown" to "Covered Equipment" at a newly acquired "Location." This automatic coverage is limited to Property Damage and Business Interruption, Extra Expense, Utility Service Interruption and begins at the time you acquire the property and continues for 90 days, under the following conditions:

A.  You must inform us, in writing, of any newly acquired "Location" within 90 days of the date you acquire it;

B.  The Limits of Insurance and Deductible amounts will be the highest amounts shown on the Declaration Page of this Policy for the same type of coverage; and

C.  You agree to pay an additional premium as determined by us.

D.  This coverage does not apply to any "Covered Equipment" insured in whole or in part by any other Boiler and Machinery (Equipment Breakdown) Insurance Policy.

E.  Agreement is reached that the location will not be insured under this Policy.

## V. DEDUCTIBLE

The deductible amounts shown on the Declaration Page of this Policy apply separately to each coverage indicated unless otherwise noted in this Policy, even if more than one coverage is involved in "One Equipment Breakdown." If more than one piece of "Covered Equipment" is involved in any "One Equipment Breakdown," only the highest deductible(s) shown for any one piece of "Covered Equipment" will apply. The Limits of Insurance shall not be reduced by the amount of the deductible(s).

A.  **Property Damage** – We will first subtract the deductible amount shown on the Declaration Page of this Policy from the amount we would otherwise pay as a result of direct damage (including Expediting Expenses, Hazardous Material, Demolition and Increased Cost of Construction, Water Damage and "Media" or "Data" but not including Spoilage and or Contamination) to Covered Property arising from an "Equipment Breakdown." We will then pay the amount of loss or expense in excess of the deductible, up to the applicable limit for Property Damage shown on the Declaration Page of this Policy subject to any sub limits of liability contained therein.

B.  **Business Interruption, Extra Expense, Utility Service Interruption**

1.  Time Deductible - If a Time Deductible is shown for Business Interruption, Extra Expense, Utility Service Interruption on the Declaration Page of this Policy, we will first subtract any Business Interruption, Extra Expense, Utility Service Interruption loss incurred during that specified time period immediately following the "Equipment Breakdown" from the amount we would otherwise pay. We will then pay the amount of loss or expense incurred after the specified time period, up to the applicable limit for Business Interruption, Extra Expense, Utility Service Interruption shown on the Declaration Page of this Policy subject to any sub limits of liability contained therein.

2.  Dollar Deductible - If a Dollar Deductible is shown for Business Interruption, Extra Expense, Utility Service Interruption on the Declaration Page of this Policy, we will first subtract the deductible amount shown on Declaration Page of this Policy from the amount we would otherwise pay. We will then pay the amount of loss or expense in excess of the deductible, up to the applicable limit for Business Interruption, Extra Expense Utility, Service Interruption

shown on the Declaration Page of this Policy subject to any sub limits of liability contained therein.

3. ADV Deductible - If the Business Interruption, Extra Expense, Utility Service Interruption deductible is expressed as an Average Daily Value (ADV), the deductible amount will be calculated as follows:

701-14   Ed. 9/05                    Page 6 of 16

FM/NBI POLICY 000020

The ADV will be the net profits and fixed charges and expenses of your business for all "Locations," affected by the "Equipment Breakdown," that would have been earned had no "Equipment Breakdown" occurred during the "Period of Interruption," divided by the number of working days in that period.

The number of ADV's indicated on the Declaration Page of this Policy will be multiplied by the ADV as determined above. The result will be used as the Business Interruption, Extra Expense, Utility Service Interruption deductible. We will then subtract the calculated deductible amount from the amount we would otherwise pay. We will then pay the amount of loss or expense in excess of the deductible, up to the applicable limit for Business Interruption, Extra Expense, Utility Service Interruption shown on the Declaration Page of this Policy subject to any sublimits of liability contained therein.

**C. Spoilage and or Contamination**

We will first subtract the deductible amount shown on the Declaration Page of this Policy from the amount we would otherwise pay. We will then pay the amount of loss in excess of the deductible up to the applicable limit for Spoilage and or Contamination shown on the Declaration Page of this Policy subject to any sublimits of liability contained therein.

## VI. EXCLUSIONS

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. Ordinance or Law - Any increase in loss caused by or resulting from enforcement of any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation, except as provided for under the Demolition and Increased Cost of Construction coverage of this Policy;

2. Nuclear Hazards, whether they be direct, indirect, proximate or remote:

   a. From an "Equipment Breakdown" caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or

   b. From nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled caused directly or indirectly by, contributed to or aggravated by an "Equipment Breakdown";

3. Loss from an "Equipment Breakdown" caused directly or indirectly by: War, including undeclared or civil war; hostile or warlike action including action in hindering, combating or defending against an actual, impending or expected attack, by any government or sovereign power (de jure or de facto) or any authority maintaining or using military, naval or air forces; or an agent of any such government, power, authority or forces; insurrection, rebellion, revolution, civil war or usurped power; or by confiscation by order of any government or public authority;

4. Fire or combustion explosion that occurs at the same time as an "Equipment Breakdown" or that ensues from an "Equipment Breakdown." With respect to any electrical equipment that is "Covered Equipment" or forms a part of "Covered Equipment," this exclusion is changed to read:

   "Fire or combustion explosion outside the "Covered Equipment" or part thereof that occurs at the same time as an "Equipment Breakdown" or ensues from an "Equipment Breakdown."

5. An "Equipment Breakdown" that is the direct or indirect result of an explosion or fire.  However, we will pay for an explosion of steam boilers, steam piping, steam turbines, steam engines, or rotating machinery that suffers an explosion resulting from centrifugal force;

701-14  Ed. 9/05                           Page 7 of 16

FM/NBI POLICY 000022

6. Fire, lightning, sprinkler leakage, windstorm, hail, collapse, weight of ice or snow, freezing (or other effects of cold weather), aircraft or vehicular impact, smoke, explosion (except those explosions covered elsewhere in this Policy), civil authority, riot, civil commotion, vandalism or molten material;

7. Water or other means used to extinguish a fire, even when the attempt is unsuccessful;

8. Flood; however:

   a. If an "Equipment Breakdown" results from a flood, we will pay for loss, damage or expense caused by "Equipment Breakdown";

   b. If "Covered Equipment" of an electrical nature requires drying out because of a flood, we will pay for the expense of such drying subject to the Limit of Insurance(s) and Deductible(s) shown on the Declaration Page of this Policy;

9. An "Equipment Breakdown" caused directly or indirectly by earth movement, including but not limited to earthquake, landslide, mudslide, subsidence or volcanic eruption;

10. An "Equipment Breakdown" to any "Covered Equipment" that is undergoing a test;

11. Lack of, or the excess of heat, light, steam, power or refrigeration except as provided for under the Spoilage and or Contamination coverage (if any) of this Policy;

12. Any indirect result of an "Equipment Breakdown" other than as provided in the coverage(s) within this Policy.

## VII. CONDITIONS

### A. Loss Conditions

1. Duties in the Event of Loss or Damage – You must see that the following are done in the event of loss or damage:

   a. Provide us immediate written notice of the loss or damage. Immediate, as used here, means: within 72 hours. Include a description of the property involved;

   b. As soon as possible, provide us a description of how, when and where the loss or damage occurred;

   c. Allow us a reasonable time and opportunity to examine the property and premises before repairs are undertaken or physical evidence of the "Equipment Breakdown" is removed. You must take whatever measures are necessary for protection from further damage;

   d. Permit us to inspect the property and records;

   e. If requested, permit us to question you under oath, at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed;

   f. Send us a signed, sworn statement of loss containing the information we request to settle the claim. You must do this within 60 days after our request; and

g.   Cooperate with us in the investigation and or settlement of the claim.  In no event shall there be any abandonment of property to us.

2.   Insurance Under Two or More Coverages - If two or more of this Policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage, subject to any applicable limits of insurance.

701-14   Ed. 9/05                    Page 8 of 16

3.  Joint Loss Agreement - In the event you suffer a loss of or damage to Covered Property at a "Location" designated in this Policy and also designated in another insurance policy or policies, and there is a disagreement between us and the other insurer(s) with respect to:

    a.  Whether the loss or damage was caused by an "Equipment Breakdown" insured against by this Policy or by a peril insured against by another insurance policy or policies, or

    b.  The extent of participation of this Policy and of such other insurance policy or policies in the loss or damage;

    then, after agreement between you, us and the other insurer(s) as to the total amount of the loss or damage recoverable under both policies, we will, upon your written request, pay you, in addition to that portion of the total recoverable loss or damage for which we admit liability:

    One-half (1/2) of that portion of the total recoverable loss or damage which is in disagreement (but in no event more than the amount remaining payable under either this Policy or the other insurance policy or policies after making provision for undisputed payments) provided that the other insurer(s) shall simultaneously pay you the remaining one-half (1/2) of that portion of the total recoverable loss or damage which is in disagreement.

    Such payment by us and the acceptance of the same by you signifies our agreement to submit to and proceed with arbitration within 90 days of such payment in order to apportion the amount of the total recoverable loss or damage which is in disagreement between us and the other insurer(s). The arbitrators shall be three in number, one of whom shall be appointed by us, one of whom shall be appointed by the other insurer(s), and the third appointed by consent of the other two. The decision by the arbitrators shall be binding on the parties.

    You agree to cooperate in furnishing information and technical data as may be required by us in connection with such arbitration or any other method of apportionment upon which we and the other insurer(s) may decide, but not to intervene therein.

    Except as otherwise expressly provided, this Joint Loss Agreement does not modify or waive any of the terms and conditions of this Policy or affect in any way the rights of the parties to which this Policy applies.

4.  Legal Action Against Us - No one may bring a legal action against us under this Policy unless:

    a.  There has been full compliance with all the terms of this Policy; and

    b.  The action is brought within 2 years after the date of the "Equipment Breakdown"; or

    c.  We agree in writing that you have an obligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this Policy to bring us into an action to determine your liability.

701-14   Ed. 9/05                    Page 9 of 16

FM/NBI POLICY 000026

5.   Loss Payable and Mortgagee Clause

    a.   Loss or damage will be adjusted with the first named Insured and payable as the first named Insured directs subject to: mortgagee; lender; or similar interests; as their interest may appear, as shown on any certificate(s) of insurance issued prior to loss by your agent or broker and on file with us.  The effective date of any interests will be the issue date of the certificate(s) unless a later date is specified on the certificate(s).

    b.   We may cancel this Policy as allowed by the Cancellation Condition.  Cancellation ends this agreement as to any Mortgagee's interest(s).  If we cancel, we will mail you and any Mortgagee(s) the same advance notice.

    c.   If we make any payment to a Mortgagee, we will obtain their rights against any other party.

6.   Other Insurance

    a.   You may have other insurance subject to the same terms, conditions and provisions as the insurance under this Policy.  If you do, we will pay our share of the covered loss or damage.  Our share is the proportion that the total loss resulting from any "Equipment Breakdown" bears to the Limits of Insurance of all insurance covering on the same basis.

    b.   If there is other insurance covering the same loss or damage, other than that described in (a) above, we will pay only the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.

In no case, will we pay more than the applicable limit(s) shown on the Declaration for loss resulting from an "Equipment Breakdown."

7.   Subrogation

In the event of any payment under this Policy, we may require from you an assignment or other transfer of all rights of recovery against any party for loss to the extent of our loss payment.

We shall not acquire any rights of recovery which you have expressly waived prior to an "Equipment Breakdown" nor shall such waiver affect your rights under this Policy.  However, you shall do nothing after an "Equipment Breakdown" to prejudice our rights.

8.   Salvage and Recoveries

When, in connection with any loss under this Policy, there is salvage or recovery received subsequent to the payment of loss, the loss shall be recalculated on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was determined.  Any amounts due either party from the other will be paid promptly.

9.   Valuation

    a.   Property Damage

(1)   We will pay you the amount you spend to repair or replace your Covered Property directly damaged by an "Equipment Breakdown."  Our payment will be the lesser of:

(a)   The cost at the time of the "Equipment Breakdown" to repair the damaged covered property;

701-14   Ed. 9/05                       Page 10 of 16

(b)   The cost at the time of the "Equipment Breakdown" to replace the Covered Property with property of like kind, capacity, size and quality; or

(c)   The amount you actually spend that is necessary to repair or replace the damaged property.

(2)   As respects your Covered Property if the cost of repairing or replacing only a part of the Covered Property is greater than:

(a)   The cost of repairing the Covered Property; or

(b)   The cost of replacing the entire Covered Property on the same site

We will pay only the lesser amount.

The repair parts or replacement Covered Property must be:

(a)   Of like kind, capacity, size and quality; and

(b)   Used for the same purpose.

However, except as provided for elsewhere in this Policy, the following Covered Property will be valued at the time of loss as follows:

(a)   On stock in process: the value of raw material and labor expended plus the proper proportion of overhead charges.

(b)   On finished goods manufactured by you:  the regular cash selling price at the location where the loss occurs, less all discounts and charges which the merchandise would have been subject to had no loss occurred.

(c)   On raw material, supplies and other merchandise not manufactured by you: the replacement cost.

(3)   We will not pay:

(a)   If the loss or damage is to Covered Property that is obsolete or useless to you; or

(b)   For any extra cost if you decide to repair or replace the damaged property with property of a better kind or quality or of larger capacity.  However, if Covered Property requires replacement due to an "Equipment Breakdown" that is unrepairable, we will pay your additional cost to replace with property that is , safer or more efficient than the property being replaced.  We will pay up to 125% of what the cost would have been to repair or replace with like kind and quality.  This condition does not increase any of the applicable limits.  This condition does not apply to any property to which "Actual Cash Value" applies. This condition does not apply to any property to which the Demolition and Increased Cost of Construction coverage of this Policy applies.

(4)   If you do not repair or replace the damaged property within 24 months after the date of the "Equipment Breakdown," then we will pay only the lesser of:

(a)   The "Actual Cash Value" at the time of the "Equipment Breakdown"; or

(b)   The cost to make repairs to the damaged property, or

(c)   The cost to replace the damaged property with property of like kind and quality

701-14   Ed. 9/05                           Page 11 of 16

FM/NBI POLICY 000030

all with proper deduction for depreciation and whether or not you elect to repair or replace the damaged property.

(5) Appraisal

If you disagree with us as to the amount of loss on the property for which we are liable under this Policy, each shall, upon the written demand of either party, select a competent and disinterested appraiser. Should the other party fail to select its appraiser within 30 days, then the requesting party may select the second appraiser. The appraisers shall first select a competent and disinterested umpire, and failing for 15 days to agree on such umpire, then upon the request of the either party, such umpire shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the replacement cost new and the "Actual Cash Value" at the time of loss and the amount of loss and upon failure to agree shall submit their differences to the umpire. An award in writing by any two of said three persons shall determine the amount of said loss. Both parties to this Policy shall pay the appraisers respectively chosen by each and shall share and pay equally for the umpire and for other expenses of appraisal. We shall not be held to have waived any of our rights by any act relating to appraisal.

b. Business Interruption, Extra Expense, Utility Service Interruption

(1) We will not pay for:

(a) The loss from the interruption of business that would not or could not have been carried on if the "Equipment Breakdown" had not occurred;

(b) the loss from your failure to use due diligence and dispatch in the repair or replacement of lost or damaged property and to use all reasonable means (including the use of merchandise or other property available to you, or the property or services of others) to resume business at the "Location(s)" shown on the Declaration Page of this Policy or anywhere else; and

(c) The part of any loss or expense that is due solely to the suspension, lapse, or cancellation of a contract following an "Equipment Breakdown."

(d) Loss during any additional time due to your inability to resume operations for any reason, including but not limited to:
1) making changes to equipment,
2) making changes to the buildings or structures except as provided in the Demolition and Increased Cost of Construction coverage; and
3) restaffing or retraining employees.

(2) At your expense you must immediately give notice of an "Equipment Breakdown" to any of our offices. You must confirm that notice in writing.

Our liability under this Policy starts:

(a) At the time of the "Equipment Breakdown"; or
(b) 24 hours before we receive notice of "Equipment Breakdown"; whichever is later.

 (3) You must reduce your loss, if possible, by:

  (a) Resuming business, partially or completely;
  (b) Using merchandise or other property available to you;
  (c) Using the property or services of others.

701-14   Ed. 9/05    Page 12 of 16

FM/NBI POLICY 000032

**B.  Other Conditions**

1.  Bankruptcy - The bankruptcy or insolvency of you or your estate will not relieve us of any obligation under this Policy.

2.  Changes - This Policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown on the Declaration Page of this Policy is authorized to make changes in the terms of this Policy with our consent.  The terms of this Policy can be amended or waived only by endorsement issued by us and made a part of this Policy.

3.  Concealment, Misrepresentation or Fraud - This Policy is void in any case of fraud by you relating to it.  It is also void if you intentionally conceal or misrepresent a material fact concerning:

    a.  This Policy;
    b.  The Covered Property;
    c.  Your interest in the Covered Property.

4.  Inspection and Surveys - We have the right but are not obligated to:

    a.  Make inspections and surveys at any time;
    b.  Give you reports on the conditions we find; and
    c.  Recommend changes.

    Any inspections, surveys, reports or recommendations will not constitute an undertaking, on behalf of or for the benefit of you or any other entity, to determine or warrant that the insured property is safe or healthful.  We will have no liability to you or any other person because of any inspection or failure to inspect.   The owner and or operator has the responsibility to assure that jurisdictional inspections are performed as required.

5.  Suspension - Whenever "Covered Equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "Equipment Breakdown" to that "Covered Equipment."  This can be done by hand delivering or mailing a written notice by certified mail of suspension to you at:

    a.  Your last known address; or
    b.  The location of the equipment.

    Once suspended in this way, your insurance can be reinstated only by an endorsement to this Policy for that "Covered Equipment."

    If we suspend your insurance, you will get a pro-rata refund of premium for that "Covered Equipment".  The suspension will be effective even if we have not yet made or offered a refund.

6.  Cancellation - You may cancel this Policy by mailing to us, written notice stating when thereafter such cancellation shall be effective.  We may cancel this Policy by mailing to you, at the Principal Address stated on the Declaration Page of this Policy or at your last known address, written notice stating when, not less than 30 days thereafter, or 10 days for nonpayment of premium, such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.  Hand delivery of such written

notice either by you or by us shall be equivalent to mailing.

701-14   Ed. 9/05                    Page 13 of 16

FM/NBI POLICY 000034

If you cancel this Policy, the return premium shall be computed at 90% of the pro-rata unearned premium.

If we cancel, the earned premium shall be computed pro-rata.  Premium adjustment may be made at the time cancellation is effected and, if not then, shall be made as soon as practicable after cancellation becomes effective.

7.  Assignment of interest under this Policy shall not bind us until our consent is endorsed hereon; if, however, you should die or be adjudged bankrupt or insolvent during the period of this Policy, this Policy, unless canceled, will continue in force, provided written notice is given to us within 60 days after the date of such death, adjudication, or insolvency.

8.  Errors and Omissions– We agree to pay your covered loss if such loss is otherwise not payable solely because:

   a.  any error or unintentional omission by you in the description or location of property insured under this Policy, which error or omission existed at the inception date of this Policy, or

   b.  any error or unintentional omission by you in the description or location of property insured under this Policy in any subsequent amendments to this Policy, or

   c.  failure through error or unintentional omission by you to include (1) any location owned or occupied by you at the inception date of the Policy, or (2) any location newly acquired or occupied during the term of this Policy,

   You agree to give us prompt notice of any such error or omission when discovered.

9.  Liberalization –If any revisions that would broaden the coverage (without additional premium) under this Policy are filed with, and approved by regulatory authorities having jurisdiction, the broadened coverage will immediately apply to this Policy.

## VIII. DEFINITIONS

**"Actual Cash Value"** means the amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

**"Covered Equipment"** means any:

1.  Boiler, fired vessel, unfired vessel normally subject to vacuum or internal pressure, other than weight of its contents, refrigerating or air conditioning system and its piping and its accessory equipment;

2.  Mechanical or electrical machine or apparatus used for the generation, transmission, control or utilization of mechanical, electrical hydraulic, or pneumatic power;

3.  Fiber Optic Cables;

"Covered Equipment" does NOT mean any:

1.  Glass vessels, but not excluding any glass lining of a metal vessel;

2.  Sewer piping, piping forming a part of a fire protection system or water piping (including valves

and fittings) other than:

a) Feed water piping between any boiler and its feed pump or injector;
b) Boiler condensate return piping;
c) Water piping forming a part of refrigerating or air conditioning system if such piping is used for cooling, humidifying or space heating purposes;

701-14   Ed. 9/05                    Page 14 of 16

FM/NBI POLICY 000036

3.   Structure, foundation, cabinet or compartment supporting or containing any "Covered Equipment," penstock, draft tube or well casing;

4.   Vehicle, aircraft, self-propelled equipment or floating vessel;

5.   Machine or apparatus used for research, diagnostic, medical, surgical, therapeutic, dental, or pathological purposes;

6.   X-ray machine, electron microscope, particle accelerator, beta gage, spectrograph or other similar machine or device;

7.   Felt, wire, screen, die, mold, extrusion plate, swing hammer, grinding disc, cutting blade, chain, belt, clutch plate, brake pad or any part or tool subject to periodic replacement.

8.   Any equipment that you do not own, lease, or operate under your control unless specifically identified elsewhere in this Policy.

**"Data"** means information or instructions used by computers or computerized equipment.

**"Equipment Breakdown"** means:

Physical loss or damage both originating within "Covered Equipment" and caused by, resulting from, or consisting of:

1.   Mechanical breakdown;
2.   Electrical breakdown; or
3.   Rupture, bursting, bulging, implosion, steam or centrifugal explosion.

However, "Equipment Breakdown" does not mean:

1.   Wear and tear;

2.   Rust or other corrosion, decay, deterioration, hidden or latent defect, mold or any quality in "Covered Equipment" that causes it to damage or destroy itself;

3.   Settling, cracking, shrinking or expansion;

4.   Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals;

5.   Any accident, loss, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software;

6.   The functioning of any safety or protective device; or

7.   Leakage at any fitting, valve, shaft seal, gland packing, joint or connection;

8.   The testing of any "Covered Equipment."

701-14   Ed. 9/05                    Page 15 of 16

FM/NBI POLICY 000038

**"Fungus, Wet Rot, Dry Rot and or Bacteria"** means any type or form of fungus, wet rot, dry rot, or bacteria, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by a fungus or fungi.

**"Location"** means the premises at the address(es) shown on the Declarations or newly acquired premises as described in Section IV in this Policy.  Unless we grant prior written consent, "Location(s)" under this Policy will be constrained to the United States of America, Puerto Rico and Canada.

**"Media"** means material on which "Data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

**"One Equipment Breakdown"** - If an initial "Equipment Breakdown" causes other "Equipment Breakdowns" all will be considered "One Equipment Breakdown."  All "Equipment Breakdowns" at any one "location" that manifest themselves at the same time and are the result of the same cause will be considered "One Equipment Breakdown."

**"Period of Interruption"** means the period of time that begins at the time of the "Equipment Breakdown" and continues until the earlier of:

a.   The date the physical damage to Covered Property is repaired or replaced; or

b.   The date on which such damaged property could have been repaired or replaced with the exercise of due diligence and dispatch,

plus the number of days, if any, shown in the Declaration Page of this Policy for Extended Period of Interruption.

The "Period of Interruption" will include that period for which physically damaged or destroyed raw material would have supplied operating needs.

The "Period of Interruption" will not include any additional time period resulting from your inability to procure suitable raw material or supplies, to replace those physically damaged or destroyed.

The "Period of Interruption" does not include the interruption of business that would not or could not have been carried on if the "Equipment Breakdown" had not occurred.

**"Period of Utility Service Interruption"**   means that period of time starting when the "Covered Equipment" suffers an "Equipment Breakdown" and ending when the supply of telephone, electricity, air conditioning, refrigeration heating, gas, sewer, water or steam services to your "location" is restored.

701-14  Ed. 9/05                    Page 16 of 16

FM/NBI POLICY 000040



**COLORADO**

**AMENDATORY ENDORSEMENT**

It is agreed with respect to any insured location in the State of Colorado that this Policy is amended.

The provision Cancellation is replaced by:

**CANCELLATION**

This Policy may be cancelled at any time at the request of you by surrendering this Policy to us, or by giving written notice to us stating when such cancellation will take effect.

If this Policy has been in effect for less than 60 days, we may cancel it by mailing or delivering to you and the agent or broker of record, a written notice of cancellation at least:

a.   10 days before the effective date of cancellation if the cancellation for nonpayment of premium; or

b.   30 days before the effective date of cancellation if the cancellation is for any other reason.

If this Policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this Policy by mailing through first class mail to you and the agent or broker of record, a written notice of cancellation;

a.   Including the actual reason, at least 10 days before the effective date of cancellation, if the cancellation is for nonpayment of premium; or

b.   At least 45 days before the effective date of cancellation if the cancellation is for any other reason.

We may cancel this Policy based only on one or more of the following reasons:

a.   Nonpayment of premium;

b.   A false statement knowingly made by you on the application for insurance; or

c.   A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of this Policy, unless    you have notified us of the change and we accept such change.

If we cancel, the earned premium shall be computed pro rata.  Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective.  Our check or the check of our representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to you.

**FACTORY MUTUAL INSURANCE COMPANY**
1097-6 Ed. 9/05                                   PAGE 1 OF 2

FM/NBI POLICY 000042

When you cancel this Policy, the return premium shall be computed as follows:

a.   Policies with a term of less than 1 year shall have the return premium computed at 90% of the pro rata unearned premium.

b.   Policies for which the premium is payable annually (regardless of the full term of the policy) shall have the return premium computed at 90% of the pro       rata unearned premium for 1 year.

c.   Two and 3 year prepaid policies during the first year shall have the return premium computed at 90% of the pro rata unearned premium for the first  year, plus 100% of the premium for the remaining policy term.  After the first year, 100% of the pro rata unearned premium shall be returned.

**NONRENEWAL**

If we decide not to renew this Policy, we will mail through first class mail to you and the agent or broker of record, written notice of the nonrenewal at least 45 days before the expiration date, or its anniversary date if it is a policy written for a term of more than one year or with no fixed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**INCREASE IN PREMIUM OR DECREASE IN COVERAGE**

We will not increase the premium unilaterally or decrease the coverage benefits on renewal of this Policy unless we mail through first class mail written notice of such intention including the actual reason, to your last mailing address known to us, at least
45 days before the effective date.

Any decrease in coverage during the policy term must be based on one or more of the following reasons:

a.   Nonpayment of premium;

b.   A false statement knowingly made by you on the application for insurance; or

c.   A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of this Policy unless     you have notified us of the change and we accepts such change.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**FACTORY MUTUAL INSURANCE COMPANY**
1097-6 Ed. 9/05                    PAGE 2 OF 2

FM/NBI POLICY 000044



**NEBRASKA**

**AMENDATORY ENDORSEMENT**

It is agreed with respect to any insured location in the State of Nebraska that this Policy is amended.

The provision Legal Action Against Us is replaced by:

**LEGAL ACTION AGAINST US** – No one may bring a legal action against us under this Policy unless:

a.   There has been full compliance with all the terms of this Policy; and

b.   The action is brought within 5 years after the date of the "Equipment Breakdown"; or

c.   We agree in writing that you have an obligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award.  No one has the right under this Policy to bring us into an action to determine your liability.

The provision Appraisal is amended as follows:

**APPRAISAL –** Substitute the word "may" for the word "shall" in the first sentence of this policy provision.

The provision Cancellation is replaced by:

**CANCELLATION -** You may cancel this Policy by returning it to us or by giving us written notice and stating at what future date coverage is to stop.

We may cancel this Policy by mailing written notice to you by registered, certified or first class mail at the last mailing address known to us. If sent by first class mail, a United States postal certificate of mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate.

We will give you notice of cancellation:

**1.** Not less than 10 days prior to the effective date of cancellation:

    **a.** For nonpayment of premium; or
    **b.** If this binder or Policy has a term of 60 days or less and has not previously been renewed.

**2.** Not less than 60 days prior to the effective date of cancellation for any other reason.

Our notice will state the reasons for cancellation.  During the first 60 days this policy is in effect, we may cancel for any reason.  If this Policy has been in effect for more than 60 days, or if it is a renewal of a policy issued by us, we may cancel only if one or more of the following reasons apply:

**1.** The premium has not been paid when due;
**2.** This Policy was obtained through a material misrepresentation;
**3.** The risk originally accepted has substantially increased;
**4.** You have submitted a fraudulent claim;

5. You have violated any of the terms and conditions of this Policy;
6. There is certification to the Director of Insurance of loss of reinsurance by us for all or a substantial part of the underlying risk insured; or
7. There is determination by the Director of Insurance that the continuation of this Policy could place us in violation of the insurance laws of this state.

**FACTORY MUTUAL INSURANCE COMPANY**
Form 1097-28 Ed. 9/05                              PAGE 1 OF 2

The return premium to you, if any, will be refunded at the time of cancellation or as soon as practical. Payment or tender of the unearned premium is not a condition of cancellation.

**NONRENEWAL -** If we decide not to renew this Policy we will mail by registered, certified or first class mail to you, at the last mailing address known to us, our notice of nonrenewal at least 60 days before the end of the policy period or anniversary date. If the notice is sent by first class mail, a United States postal certificate of mailing shall be sufficient proof of receipt of notice on the third calendar day after the date of the certificate. Our notice will state the reasons for nonrenewal.

**FACTORY MUTUAL INSURANCE COMPANY**
Form 1097-28 Ed. 9/05                    PAGE 2 OF 2