## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FACTORY MUTUAL INSURANCE COMPANY, d/b/a Mutual Boiler Re, | ) ) ) | |
| Plaintiff, | ) ) | 8:09CV159 |
| vs. | ) ) | ORDER |
| NEBRASKA BEEF, INC., and SOUTH OMAHA INVESTORS PACK, LLC.) | ) ) ) | |
| Defendants. | ) | |

This matter is before the court on the plaintiff's Motion to Compel Production of Documents, Answers to Interrogatories and Requests for Admission (Filing No. 56). The plaintiff filed an index and exhibits (Filing No. 57) in support of the motion. The defendants filed a brief (Filing No. 67) opposition to the motion. The plaintiff filed a brief (Filing No. 74) in reply.

## BACKGROUND

On May 7, 2009, the plaintiff filed suit against the defendants seeking declaratory judgment regarding insurance coverage and policy rescission. **See** Filing No. 1. The plaintiff, Factory Mutual Insurance Company, d/b/a Mutual Boiler Re (MBRe), issued insurance policies to the defendants, Nebraska Beef and South Omaha Investors Pack, L.L.C., (collectively, Nebraska Beef)[1] providing coverage for direct physical loss or damage to certain property caused by an "Equipment Breakdown" as defined in each policy. *Id.* ¶ 6. The plaintiff alleges the defendants failed to provide timely notice of loss related to four incidents that occurred in June and July of 2008. *Id.* ¶¶ 6, 18-45. Accordingly, the plaintiff denied coverage for the losses. The plaintiff also alleges the defendants made material misrepresentations on applications for renewal of the policies by failing to list the losses for which the defendants failed to provide adequate notice. *Id.* ¶ 6.

---

[1] The parties have largely treated Nebraska Beef, Inc. and South Omaha Investors Pack, LLC, as one and the same. For ease of reference, the defendants will be referred to as "defendants" or "Nebraska Beef" in this Order.

On June 2, 2009, the defendants filed an Answer and Counterclaim seeking damages from the plaintiff for breach of contract and bad faith.  **See** Filing No. 8.  The defendants allege they provided timely and adequate notice for the subject losses in compliance with the express directions contained in the plaintiff's policies and related attachments.  *Id.* at 11 ¶¶ 6-7.  In light of such notice and the plaintiff's denial of benefits, the defendants seek punitive damages as well.  **Id.** at 12 ¶ 10.

On January 6, 2010, the plaintiff filed the instant motion to compel discovery from the defendants based on Fed.R.Civ.P 37(a) which allows a party to move for discovery when the opposing party's answer is evasive or incomplete.  **See** Filing No. 56.  The plaintiff moved the court to compel the defendants to:

1.  Produce all documents and materials responsive to the Request for Production of Documents Nos.  5, 6, and 17;

2.  Respond in complete detail to Interrogatory Nos.  5 and 6; and

3. Respond in complete detail to Request for Admissions Nos.  2, 4 and 7.

**See** Filing No.  56.

The defendants filed a brief in response to plaintiff's motion contemporaneously with a Brief in Opposition to Plaintiff's Motion for Extension of Time and In Support of Defendant's Motion to Stay Discovery (Filing No.  66), which they asked the court to rely on as a companion piece.  **See** Filing No. 67,  p.  2.  The defendants asked the court to deny the plaintiff's motion to compel.

The plaintiff replied with a brief in further support of the motion setting forth the reasons they believe each request is relevant and likely to lead to the discovery of admissible evidence.  See Filing No.  74.

## ANALYSIS

According to Fed.R.Civ.P. 26(b)(1), the scope of discovery includes anything which is reasonably calculated to lead to the discovery of admissible evidence. Specifically,

> "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .   Relevant information need not be admissible at

> the trial if the discovery appears reasonably calculated to lead
> to the discovery of admissible evidence."

Fed.R.Civ.P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). To determine if a matter is discoverable, the analysis requires the court to first determine whether the sought discovery is relevant to a claim or defense. Accordingly, although limited, relevant evidence includes "any matter that could bear on, or that reasonably could lead to other matter that could bear on" the claims or defenses of any party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted). The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production. *Id.* "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (citations omitted). The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested

discovery is unduly burdensome.  **See** *Wagner v. Dryvit Sys., Inc., 208 F.R.D. 606, 610 (D. Neb. 2001)*.  This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents.  **See** *Id.*

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor, 329 U.S. 495, 507 (1947)*.  "To assess relevance in a given case, the court must view the matter in light of the specific claims and defenses asserted by the parties." *Fletcher v. Atex, Inc., 156 F.R.D. 45, 48 (S.D.N.Y. 1994)* (citations omitted).  "[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." *Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998)* (**citing** *Oppenheimer Fund, 437 U.S. at 351-52*).  In the end, however, courts have "wide discretion with respect to discovery matters." *Spangler v. Sears, Roebuck and Co., 138 F.R.D. 122, 123 (S.D. Ind. 1991)* (citations omitted); **see** *Credit Lyonnais v. SGC Int'l, Inc., 160 F.3d 428, 431 (8th Cir. 1998)*.

It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant. *Burnett v. Western Res. Inc., CIV. A. No. 95-2145-EEO, 1996 WL 134830, *4 (D. Kan. Mar. 21, 1996)*.  If the discovery sought appears relevant, the opposing party bears the burden of specifically showing how each discovery request is irrelevant.  *Id.*  However, a threshold showing of relevance is necessary before production of information, which does not reasonably bear on the issues in the case, is required.  *Hofer, 981 F.2d at 380*.  Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case.  **See** *Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)*.  Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, 437 U.S. at 351*.  Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and

should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  See *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989); *Morse Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447 (S.D.N.Y. 1988).

The plaintiff argues it is attempting to discover facts relevant to its defense of defendants' claim for coverage under the insurance policies issued by MBRe.  See Filing No. 56 at 2.  The plaintiff relies on Fed.R.Civ.P. 26(b)(1), which provides that discovery requests are proper if relevant to a party's claim or defense, and reasonably calculated to lead to the discovery of admissible evidence.  **Id.**  The plaintiff seeks to compel responses to the following:

> a.  **Request for Production No.  5**:  Produce any correspondence or documents that relate to any losses previously submitted to any insurance company for any type of insurance policy, since June 1, 1998, including those documents that relate to your litigation filed against Universal Surety Company.
> b.  **Request for Production No.  6**:  Produce any correspondence or documents that relate to any product recall, whether or not "voluntary" on your part, that occurred in June or July 2008.
> c.  **Request for Production No.  17**:  Produce any correspondence or documents that relate or refer in any way to internal procedures, regardless of whether those procedures are formalized, for reporting insurance losses to your insurance carriers.
> d.  **Interrogatory No.  5**: Describe in detail any and all electrical related problems defendants had with their property or equipment within the two years prior to the first of the Losses reported to MBRe, including any remedial actions (whether recommended, taken, or otherwise) to address the same.
> e.  **Interrogatory No.  6**: Describe in detail defendants' internal procedures, regardless of whether those procedures are formalized in any way, for reporting insurance losses to your insurance carriers.
> f.  **Request for Admission No.  2**: Admit that you have no proof that MBRe (excluding any claim that defendants' Brokers were acting as MBRe's agents for notice purposes) received notice of the Losses within the time required under the policies.
> g.  **Request for Admission No.  4**: Admit that you made no claim to Brooke Agency or its insurance provider after you were advised that Brooke Agency failed to provide notice to MBRe, as defendants intended within the period required under the policies.

    h. **Request for Admission No. 7**: Admit that you used Power Group to assist in locating policies to replace defendants' policies with MBRe.

**See** Filing No.  57, generally, and related Exhibits.

Defendants argue the plaintiff's requests are for information which would not assist the plaintiff in defending either the contract or bad faith actions.  **See** Filing No. 67 p. 2. The defendants do not dispute that the case arises out of an insurance contract between the parties.  **See** Filing No.  66, p. 2.  Nor do they dispute three electrical losses occurred at Nebraska Beef in the summer of 2008, during the course of the contract.  **Id.**  However, the defendants claim that timely notice was given to the plaintiff, and that the losses should be covered under the plain terms of the insurance contract.  **See** Filing No.  66 and Filing No.  67.  More specifically, the defendants assert plaintiff's argument that evidence of defendant's standard reporting procedures to other insurance companies is not relevant to the plaintiff's claim or how it may have been prejudiced by the alleged late notice in the instant case.  **See** Filing No. 67, p. 4.  Next, the defendants argue that requests for admission are governed under Fed.R.Civ.P. 36 and are not included as a proper subject for a motion to compel, nor are requests for admission to be a discovery device.  **See Id.** at 5, 6.  Further, the defendants argue that evidence of a national beef product recall which occurred near the date of one of the losses at issue, is not relevant to damages in the instant case.  **Id.** at 7.  Finally, the defendants object to the request for information related to any electrical problems with the property or equipment at issue for the prior two years, claiming the request is outside the scope of the plaintiff's claims, namely, the contract which denied coverage based on late notice.   **Id.** at 8.

The plaintiff counters that a reasonable investigation requires investigation into defendants' experience reporting claims to insurance companies - both MBRe and others - and analyzing the defendants' relationships with their brokers.  **See** Filing No.  74 p. 2, 3. Next, the plaintiff relies on Fed.R.Civ.P 36(a)(6), which provides that a court may determine the sufficiency of an answer or objection, and may order the matter to be admitted or amended, in regards to the plaintiff's requests for admission.  **Id.** at 4.  Further, the plaintiffs argue that requests related to the beef product recall are relevant to the issue of

loss payments. Finally, the plaintiffs reiterate that they are only seeking information related to Equipment Breakdown at the subject location, not any of the other Nebraska Beef facilities, and that such information is relevant to discovering the condition of defendants' property and equipment.  **Id.**  at 6, 7.

### A.  Requests for Production

Federal Rule of Civil Procedure 34 allows a party serve any other party with a request to produce and permit the requesting party or its representative to inspect or copy designated documents or electronically stored information "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1)(A).  The request "must describe with reasonable particularity each item or category of items to be inspected."  Fed. R. Civ. P. 34(b)(1)(A).  "For each item or category [requested], the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  Rule 34(b) further provides that "[t]he party upon whom the request is served shall serve a written response within 30 days after the service of the request."  **Id.**

1. *Prior Insurance Losses*

The plaintiff moves the court to compel production of documents related to prior losses submitted to insurance companies, and specifically documents related to litigation filed against another insurance company, Universal Surety Company.  **See** Filing Nos. 56 and 57-1.  According to the plaintiff, this information is relevant and probative of the defendants' knowledge and experience in reporting insurance claims.  **See** Filing No. 56, p. 5.  The defendants' response on this issue is sparse, only noting that the plaintiff failed to demonstrate how this information would assist it in defending the contract claim or how it may have been prejudiced by late notice.  **See** Filing No. 67, p. 4.  The plaintiff replies that this information is relevant to determining whether Nebraska Beef has engaged in a pattern of providing late notice to insurers, and that it is reasonable to inquire whether defendants have provided notice to their brokers for other insurance policies.  The court agrees.  The issue of relevancy is to be broadly construed and information may be deemed relevant, even if it ultimately will not be admissible at trial.  **See** Fed.R.Civ.P. 26(a)(1),

*Oppenheimer Fund*, 437 U.S. at 351.  The court finds this request relevant and directs the defendants to provide documents or correspondence responsive to Request for Production No. 5.

   2.  *Product Recall*

   The plaintiff moves the court to compel production of documents related to any product recall that occurred in June or July, 2008.  **See** Filing Nos. 56 and 57-1.  The plaintiff indicates in the instant motion they have discovered in the public domain information that the defendants' product was recalled on or around the date(s) they submitted losses to the plaintiff.  **See** Filing No. 56, p. 6.  With the recall falling closely to, and in one instance, on, the loss dates, the plaintiff argues this is irrefutably relevant for discovery purposes.  Plaintiff seeks documents representing any communications between the defendants' personnel and/or any third parties, other than the United States Department of Agriculture (from which plaintiff has already received information).  **Id.** According to the plaintiff, in the event defendants eventually prevail on the breach of contract issue, necessitating coverage for these losses, the issue of whether the recalled product was claimed as a loss will necessarily affect the defendants' purported damages.  **Id.** at 6, 7.  The defendants counter by stating the plaintiff has provided no evidence that Nebraska Beef has included any recalled product in its loss claims.  **See** Filing No. 67, p. 7.  Also, the defendant argues that even if the recall information eventually becomes relevant, it is not currently at issue in the case.  **Id.** at 8.  The plaintiff argues, in reply, that the overlapping dates of the product recall and losses should be enough to compel the court to find relevance.  **See** Filing No. 74, p. 5.  Further, the plaintiff notes that there is no support for the defendants' contention that this information is not discoverable until a later time.  **Id.**  Plaintiff merely seeks to continue its thorough investigation of what caused the losses at issue.  **Id.** at 6.  Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  **See** *Marker*, 125 F.R.D. at 121; *Morse Diesel*, 122 F.R.D. at 447.  Accordingly, the court finds this request relevant and directs the

defendants to provide documents or correspondence responsive to Request for Production No. 6.

3. *Internal Procedures for Reporting Insurance Losses*

The plaintiff moves the court to compel production of documents or correspondence that relate in any way to the defendants' internal procedures for reporting insurance losses. **See** Filing Nos. 56 and 57-1. The plaintiff identified prior litigation between Nebraska Beef and Universal Surety Company, which the plaintiff believes bolsters the relevance of the defendants' knowledge of, and experience with, reporting insurance claims. **See** Filing No. 56, p. 5. To this request, the defendants argue that plaintiff has not supported this request with case law or a demonstration of how this information would assist in supporting its claim or late notice or defending the contract claim. **See** Filing No. 67, p. 4. In reply, the plaintiff states that determining whether it was reasonable for the defendants to report their loss to their insurance broker requires an investigation into defendants' experience in reporting claims in general - to MBRe and other insurance companies. **See** Filing No. 74, p. 2. The plaintiff seeks not only late notice given to other insurance companies, but any notice at all. **Id.** The court is given wide latitude in determining relevance for discovery issues. As the notice issue is paramount to this litigation, the defendants' experience in reporting insurance losses could reasonably bear on an issue in this case. **See** ***Oppenheimer Fund***, 437 U.S. at 351. Accordingly, the court finds this request relevant and directs the defendants to provide documents or correspondence responsive to Request for Production No. 17.

## B. Interrogatories

Federal Rule of Civil Procedure 33 provides:

> An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2).

"The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If an objection is made, "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). The responding party may answer by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1).

1. *Condition of Electrical Equipment*

The plaintiff moves the court to compel answers to Interrogatories based on any and all electrical problems the defendants have had with the subject property or equipment within the two years leading up to the losses at issue. **See** Filing Nos. 56 and 57-2. Regarding the condition of the electrical equipment, the plaintiff points to the policy which states "Equipment Breakdown" does not mean "wear and tear." **See** Filing No. 56, p. 7. Additionally, the plaintiff has clarified it is only interested in electrical problems the defendants have experienced at the location for which it submitted losses. **Id.** The defendants object to this request on the grounds that the plaintiff denied coverage based on late notice, not the condition of the equipment. **See** Filing No. 67, p. 8. In its reply brief, the plaintiff notes the investigator sent to inspect the equipment, Mr. Pazdera, noted that the cause of the breakdown of the equipment was unknown. **See** Filing No. 74, p. 7. As set forth above, the court need look to see if the information requested is reasonably calculated to lead to the discovery of admissible information. **See** Fed.R.Civ.P. 26(b)(1). Relevant evidence includes any matter that could reasonably bear on the claims or defenses of either party. *Oppenheimer*, 437 U.S. at 351. Based on the foregoing, the court finds that the condition of the electrical equipment is relevant to the claims or defenses of the plaintiff, and directs the defendants to answer Interrogatory No. 5.

2. *Internal Insurance Loss Reporting Procedures*

The plaintiff also moves the court to compel answers to an interrogatory requesting any internal procedures the defendants employ for reporting losses to their insurance

carriers.  **See** Filing Nos.  56, p.  4, and 57-2.  There is no question that how the plaintiff received notice of loss is a paramount issue in the litigation.    At issue is the reasonableness of the defendants' reporting the losses to their broker.  The defendants argue they believed the losses were in fact reported to their broker, as authorized, and that other insurance contracts are not relevant to interpreting the subject contract between the parties.  **See** Filing Nos.  56, p.  4, and 67, p.  4.  However, the plaintiff replies that if the defendants want to rely on their action of notifying a broker as within the normal course of business, the defendant should provide information demonstrating the same.  As the plaintiff points out, it is not seeking information defendants provided to insurance companies which specifically constituted late notice, but rather, any notice of losses at all.  **See** Filing No.  74, p.  2.  Discovery requests are to be considered relevant if there is any possibility that the information is relevant to any issue in the case, and should ordinarily be allowed.  **See *Oppenheimer Fund*, 437 U.S. at 351**.  The court concurs that the requested information is likely to lead to the discovery of admissible evidence as required by Fed.R.Civ.P. 26(b)(1) and directs defendants to answer Interrogatory No.  6.

## C.  Requests for Admission

### 1.  *Brokers Acting as Agents*

The plaintiff moves the court to compel the defendants to admit or deny whether they have evidence showing MBRe received timely notice from its broker.  **See** Filing Nos.  56, p. 5, and 57-3.  It appears parties were confused about the extent of the request.  The plaintiff states in the present motion that it seeks a factual determination from the defendants - whether they do or do not have evidence regarding this issue.  **Id.**  at 6. MBRe claims it is entitled to know whether the defendants have evidence which conflicts with their contention they did not learn of the losses until after the notice period provided in the policies.  **Id.**  The defendants respond that the plaintiff's motion to compel answers to request for admissions is not permitted by the Federal Rules of Civil Procedure, and further, that requests for admissions are not a discovery device.  **Id.**  at 5, 6.  In its reply brief, the plaintiff clarifies it is seeking merely to confirm  that the defendants lack additional evidence that shows MBRe received notice within the time provided by the policies.  **See**

Filing No. 74, p. 5.  Federal Rule of Civil Procedure 36 deals with requests for admission and specifically states a requesting party may move to determine the sufficiency of an answer or objection, and is listed under Part V of the rules relating to depositions and discovery.  Fed.R.Civ.P. 36(a)(6).  Therefore, the court finds the defendants' arguments unpersuasive and directs the defendants to respond to Request for Admission No.  2.

      2.  *Further Claims to Brooke Agency*

      The plaintiff moves the court to compel the defendant to admit or deny whether the defendants continued to use their broker at Brooke Agency after they were advised the agency failed to provide notice to MBRe within the time period required under the policies.  **See** Filing Nos.  56, p.  5, and 57-3.  The plaintiff claims this is relevant to the issue of notice of the defendants' losses and their broker's ability to accept notice on behalf of MBRe.  **See** Filing No.  56, p.  5.  The plaintiff argues this is simply a factual request seeking to determine whether the defendants did or did not make a claim to their broker or the broker's insurance provider during the specified period.  **Id.**  at 6.  The defendants respond, as above, that such a request to compel an admission is not permitted under the Federal Rules.  The plaintiff replied that the defendants' objection was supported by no evidence as required by the federal Rules.  **See** Filing No.  74, p.  4.  The court finds this inquiry is likely to lead to discoverable evidence, and is not unduly burdensome on the defendants.  Additionally, as noted above, compelling a party to answer requests for admission is permissible under the Federal Rules.  Accordingly, the court directs the defendants to respond to Request for Admission No.  4.

      3.  *Use of Power Group to Secure Policies*

      The plaintiff moves the court to compel the defendant to admit or deny whether they engaged Power Group to assist in locating policies to replace the defendants' policies with MBRe.  **See** Filing Nos.  56, p.  5, and 57-3.  The plaintiff claims this is relevant to the issue of notice of the defendants' losses and their broker's ability to accept notice on behalf of MBRe.  **See** Filing No.  56, p.  5.  Again, the defendants respond by stating such request for admission is not permitted by the Federal Rules.  The plaintiff replied that the defendants' objection was supported by no evidence as required by the Federal Rules.  **See** Filing No.  74, p.  4.  Noting the defendants made little reference to this particular

request, the plaintiff replied only that the defendants should admit or deny whether they used Power Group to find replacement insurance. **See Id.**, p. 5. For the reasons set forth in (1.) and (2.) above, the court directs the defendants to respond to Request for Admission No. 7.

## IT IS ORDERED:

The plaintiff's Motion to Compel Production of Documents, Answers to Interrogatories, and Requests for Admission (Filing No. 56) is granted. The defendants shall have until **on or before May 7, 2010** to supplement their responses to Request for Production Nos. 5, 6 and 17; Interrogatory Nos. 5 and 6; and Request for Admission Nos. 2, 4 and 7.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 15th day of April, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.