IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FACTORY MUTUAL INSURANCE ) | |
| COMPANY, d/b/a Mutual Boiler Re, ) | |
| ) | |
| Plaintiff, ) | 8:09CV159 |
| ) | |
| vs. ) | ORDER |
| ) | |
| NEBRASKA BEEF, INC., and ) | |
| SOUTH OMAHA INVESTORS PACK, LLC.) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the plaintiff's Motion to Compel Production of Documents and Answers to Interrogatories and Requests for Admission (Filing No. 97). The plaintiff filed the motion without a brief, but with evidence attached to the motion. The defendants filed a brief (Filing No. 99) and an index of evidence (Filing No. 100) in opposition to the motion. The plaintiff filed a brief (Filing No. 102) in reply. The court will also address the plaintiff's related Motion for Extension of Discovery Deadlines (Filing No. 108). The defendants filed a brief (Filing No. 111) and an index of evidence (Filing No. 112) in opposition to the motion to extend time.

## BACKGROUND

On May 7, 2009, the plaintiff filed suit against the defendants seeking declaratory judgment regarding insurance coverage and policy rescission. **See** Filing No. 1. The plaintiff issued insurance policies to the defendants providing coverage for direct physical loss or damage to certain property caused by an "Equipment Breakdown," as defined in each policy. *Id.* ¶ 6. The plaintiff alleges the defendants failed to provide timely notice of loss related to three incidents that occurred in June and July of 2008. *Id.* ¶¶ 6, 18-45. Accordingly, the plaintiff denied coverage for the losses. On June 2, 2009, the defendants filed an Answer and Counterclaim seeking damages from the plaintiff for breach of contract and bad faith. **See** Filing No. 8. The defendants allege they did provide timely and

adequate notice for the subject losses in compliance with the express directions contained in the plaintiff's policies and their attachments. *Id.* at 11 ¶¶ 6-7.

On May 3, 2010, the court denied the parties' cross motions for summary judgment related to the defendants' counterclaim for bad faith, but granted the defendants' motion for summary judgment as to the plaintiff's declaratory judgment claim. **See** Filing No. 84. On May 5, 2010, the defendants voluntarily dismissed the bad faith counterclaim. **See** Filing Nos. 86 and 87. Accordingly, the only issue remaining is the extent of the defendants' damages. On October 27, 2010, the court issued a scheduling order setting deadlines to complete discovery on the issue of damages. **See** Filing No. 96. The deadline for discovery is March 1, 2011, and a telephone planning conference is scheduled for March 10, 2011, to schedule the matter to trial. *Id.*

Discovery in this matter has been ongoing since approximately August 21, 2009. **See** Filing No. 21. The plaintiff contends that the defendants originally agreed to provide certain requested documents, which are the subject of this motion to compel, in January, 2010. **See** Filing No. 97 - Motion p. 4. Through June 21, 2010, the defendants continued to attempt to collect the information and produce it in a report form. *Id.* On August 31, 2010, the plaintiff served second sets of interrogatories and requests for admission and a third set of requests for production. **See** Filing No. 93 - Certificate of Service. On September 30, 2010, the defendants served responses. **See** Filing No. 95 - Certificate of Service; Filing No. 97 - Exs. 1, 2 and 3. The parties exchanged correspondence about the sufficiency of the responses, but were unable to resolve their differences. Accordingly, on November 12, 2010, the plaintiff filed the instant motion to compel supplemental responses to Request for Production Nos. 39, 40, 41, 43, 44, and 45; Requests for Admission Nos. 9, 10, 14-17, 19, and 20; and Interrogatory Nos. 8, 13, and 15. **See** Filing No. 97 - Motion p. 9. In the defendants' response, they contend they have now produced additional responsive discovery or the discovery sought is not relevant in this matter to the remaining issue of damages. **See** Filing No. 99 - Response. The court will address the plaintiff's specific discovery issues below.

## ANALYSIS

As the parties are aware, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1). Discovery in this matter is further limited to the only remaining issue - damages. Additionally, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). To determine if a matter is discoverable, the court must first evaluate whether the sought discovery is relevant to a claim or defense. Accordingly, although limited, relevant evidence includes "any matter that could bear on, or that reasonably could lead to other matter that bears on" the claims or defenses of any party. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted). The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production. *Id.* "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.*

(citations omitted). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents. See *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001).

It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant. *Burnett v. Western Res. Inc.*, No. 95-2145, 1996 WL 134830, at *4 (D. Kan. Mar. 21, 1996). If the discovery sought appears relevant, the opposing party bears the burden of specifically showing how each discovery request is irrelevant. *Id.* However, a threshold showing of relevance is necessary before production of information, which does not reasonably bear on the issues in the case, is required. *Hofer*, 981 F.2d at 380. Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. See *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972). Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund*, 437 U.S. at 351. Discovery requests are relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. See *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989); *Morse Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447 (S.D.N.Y. 1988).

**A.     Requests for Admission**

"A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; . . . ." Fed. R. Civ. P. 36(a)(1). A party's answer must comply with Fed. R. Civ. P. 36(a)(4), which provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

"The quintessential function of Requests for Admissions is to allow the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute." **Xcel Energy, Inc. v. United States**, 237 F.R.D. 416, 420-21 (D. Minn. 2006) (**quoting** *Lakehead Pipe Line Co. v. Am. Home Assurance Co.*, 177 F.R.D. 454, 457-58 (D. Minn. 1997)); **see also** Fed. R. Civ. P. 36 advisory committee's note (1970 amend.) ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."). "The purpose of a request for admissions generally is not to discover additional information concerning the subject of the request, but to force the opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof." *Layne Christensen Co. v. Purolite Co.*, No. 09-2381, 2011 WL 381611, at *4 (D. Kan. Jan. 25, 2011) (slip op.).

"The court has substantial discretion to determine the propriety of such requests and the sufficiency of responses." **See** *Audiotext Comms. Network, Inc. v. US Telecom, Inc.*, No. 94-2395, 1995 WL 625744, at *1 (D. Kan. Oct. 5, 1995) (**quoting** *Dubin v. E. F. Hutton Group Inc.*, 125 F.R.D. 372 (S.D.N.Y. 1989)). If the courts determine "an answer does not comply with the requirements of Rule 36, they can order either that the matter is admitted or require the responding party to serve an amended answer." *O'Connor v. AM General Corp.*, No. 85-6679, 1992 WL 382366, at *2 (E.D. Pa. Dec. 7, 1992). "When

passing on a motion to determine the sufficiency of answers or objections, the court obviously must consider the phraseology of the requests as carefully as that of the answers or objections." *Audiotext*, 1995 WL 625744, at *2 (**quoting** *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988)). "The requesting party bears the burden of setting forth in necessary, but succinct, detail, the facts, events or communications to which admission is sought. . . ." *Audiotext*, 1995 WL 625744, at *2 (**quoting** *Diederich v. Dep't of the Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990)). "[A] requesting party should not state 'half of [a] fact' or 'half truths' which require the answering party to qualify responses." *Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 96-97 (W.D. Mo. 1973) (citations omitted). Further, "[r]egardless of the subject matter of the Rule 36 request, the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification." *Id.* at 96.

In this case, the plaintiff seeks admissions with regard to any emergency response plan or standard operating procedure the defendants may employ in situations where the defendants lose power, such as the incidents at issue. **See** Filing No. 97 - Ex. 3 (Request for Admission Nos. 9-10). Similarly, the plaintiff requests admissions related to whether the defendants were previously advised to have a plan in place or the defendants told other they did have an effective process in place. *Id.* Ex. 3 (Request for Admission Nos. 19-20). Also, associated with any such plan, Request for Admission Nos. 14-17 seek admissions related to the defendants' stated potential use of cold storage facilities related to insurance coverage other than with the plaintiff's policies. *Id.*

The plaintiff argues the requests related to cold storage are relevant to the issue of damages. The plaintiff states that when investigating the risk associated with insuring the defendants, the plaintiff received questionnaire responses related to cold storage. **See** Filing No. 37 - Motion p. 5-6 and Ex. 6 - Questionnaire Responses p. 2. The questionnaire asked whether the defendants had any "Contingency Plans (refrigerated trucks, etc)." Filing No. 37 - Ex. 6 - Questionnaire Responses p. 2. The response stated, "yes - they have nearby cold storage facilities, they have refrigerated trucks." *Id.* The questionnaire also asked "Is there a posted emergency procedure? Are employees trained in its use?" *Id.* at 3. The response stated, "Formal emergency procedure is not posted but procedures

6

are in place and employees are trained." *Id.* The plaintiff argues based on these responses and other evidence showing the defendants had a business relationship with, if not an insurable interest in, several cold storage facilities the admissions sought are relevant to whether the defendants acted reasonably to mitigate any damages during the relevant power outage incidents. **See** Filing No. 37 - Motion p. 5-6; Filing No. 102 - Reply p. 6. Additionally, the plaintiff contends any emergency response plan or later changes to a plan is relevant to whether the defendants had knowledge prior to the incidents at issue that they should have had a plan in place to manage power outages. **See** Filing No. 37 - Motion p. 7-8; Filing No. 102 - Reply p. 6.

The plaintiff served Requests for Admissions as follows:

Request for Admission No. 9

> Admit that defendants' representatives advised MBRe that defendants had an emergency response plan in place to address disaster situations as [sic] defendants' business operations.

Request for Admission No. 10

> Admit that it is fair to characterize the power outages that caused the losses as disaster situations at defendants' business operations.

**See** Filing No. 97 - Ex. 3.

The defendants provided this response to Request for Admission Nos. 9 and 10:

> Defendants object to this admission request pursuant to Fed. R. Civ. P. 36(a)(1) as it refers to facts outside the scope of the issue of damages. Whether or not defendants had an emergency response plan in place to address disaster situations at defendants' business operations is irrelevant to the amount of damages claimed by the defendants in this lawsuit and whether or not the terms of the contract cover those damages. There is no suggestion here that such a plan would have prevented coverage on any of the damages submitted by defendants.

*Id.*

The plaintiff served the following Requests for Admission:

Request for Admission No. 14

>Admit that on or around September 16, 2008, Zurich issued an insurance proposal to Nebraska Beef that included as one of the covered premises a Cold Storage facility located at 2523 Gomez Avenue in Omaha.

Request for Admission No. 15

>Admit that on or around September 16, 2008, Zurich issued an insurance proposal to Nebraska Beef that included as one of the covered premises a Cold Storage facility located at 4410 South 36th Street in Omaha.

Request for Admission No. 16

>Admit that on or around September 10, 2008, Julie Plummer, acting on Nebraska Beef's behalf, advised Liberty Mutual that Nebraska Beef used the location at 7070 South 107th Street in LaVista, Nebraska for cold storage.

Request for Admission No. 17

>Admit that on or around September 10, 2008, Julie Plummer, acting on Nebraska Beef's behalf, advised Liberty Mutual that Nebraska Beef used the location at 3301 G Street in Omaha, Nebraska for cold storage.

*Id.*

The defendants provided the same response to each Request for Admission Nos. 14-17, as follows:

>Defendants object to this admission request pursuant to Fed. R. Civ. P. 36(a)(1) as it refers to facts outside the scope of the issue of damages. Whether defendants in the past advised another insurer about a cold storage location is irrelevant to whether the terms of the contract between the parties cover defendants' damages in this case.

*Id.*

The plaintiff served additional Requests for Admissions and the defendants served responses as follows:

Request for Admission No. 19

>Admit that on or around August 10, 2007, Zurich advised Nebraska Beef that the reliability of the electrical supplier was

still a concern, and that Nebraska Beef should have a written plan on what is to be done during the next power outage.

Response:

Defendants object to this admission request pursuant to Fed. R. Civ. P. 36(a)(1) as it refers to facts outside the scope of the issue of damages. Whether another insurer had advised defendants about the reliability of its electrical supplier, or that defendants should have a written plan for power outages, is irrelevant to whether or not the terms of plaintiff's contract cover defendants' damages in these three losses.

Request for Admission No. 20

Admit that on or around April 14, 2008, Gene Moyer, acting on Nebraska Beef's behalf, directed a memorandum to Lin Stortz that Nebraska Beef had experienced internal power failures and shut downs, in which cases there was a process in place for handling product that is in process, which process Mr. Moyer stated is effective and has worked to minimize loss.

Response:

Defendants object to this admission request because it asks for information concerning statements allegedly made by an independent third party witness and to whom plaintiff has equal access as a source for confirming or denying his own statements. Defendants further object that the information requested in this admission is irrelevant to the damages claimed by the defendants pursuant to the terms of the contract between the two parties. Defendants further object to this admission request as asking for information allegedly contained in a written document which was not supplied with the admission requests and about which defendants have no knowledge.

**See** Filing No. 97 - Ex. 3.

The defendants argue they should not be required to respond to Request for Admission Nos. 9 and 10, as if they relate to cold storage facilities, because the requests do not specify those types of facilities. **See** Filing No. 99 - Response p. 8. Those requests only ask about general plans. Further, the defendants argue answers to the requests provides mere speculation about facilities the defendants could have used, and are not relevant to the damages they actually did sustain during the power outages at issue. *Id.* at 9-11. Finally, the defendants state their "emergency response plan" was discussed

during discovery, but is actually called a Standard Operating Plan (SOP), which has been produced. *Id.* at 9.  More important than the title, the defendants state the SOP relates only to protocol addressing suspected meat contamination under United States Department of Agriculture guidelines. *Id.* at 9, 11-12.  The defendants acknowledge the response given in the questionnaire, but argue that any statements they made regarding some other emergency response plan cannot possibly be relevant to how many head of cattle or boxes of beef they lost during the power outages at issue. *Id.* at 9-10.  Instead, the defendants contend, the requests are worded in a manner to suggest the plaintiff is attempting to dispute coverage, rather than merely ascertain the amount of damages. *Id.* at 10.

The plaintiff has met the burden of showing the requests for admission seek admissions on relevant information, even though, as the defendants suggest, there is no certainty an emergency response plan, by any name, would have prevented any of the damages alleged by the defendants.  Evidence of such a plan or plans and whether the defendants acted reasonably in response to the power outages may bear on the amount of damages to be awarded in this case.  Moreover, the defendants need only respond to the requests asked.  In fact, the defendants' SOP may or may not be the contingency plan referenced in the questionnaire and requests.  Furthermore, the defendants fail to substantiate any other objections supporting their refusal to provide answers to the requests for admissions at issue.  Accordingly, the defendants shall provide supplemental responses to the plaintiff's Request for Admission Nos. 9, 10, 14-17, 19, and 20.

**B.     Interrogatories**

Federal Rule of Civil Procedure 33 provides:  "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Further, "[t]he responding party must serve its answers and any objections within 30 days after being served with the interrogatories.  A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If an objection is made, "[t]he grounds for objecting . . . must be stated

with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). The responding party may answer by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d).

### 1. Interrogatory No. 8

Interrogatory No. 8 states: "For each allegation in requests for admission filed contemporaneously with these interrogatories, to which you did not have an unqualified admission, explain any and all reasons for any such denial or partial denial, including reference to any facts that support those reasons." **See** Filing No. 97 - Ex. 2. The defendants responded only with regard to Request for Admission Nos. 11, 13, and 18. **See** *id.* The plaintiff argues the defendants failed to "respond in any way" to Interrogatory No. 8, with regard to Request for Admission No. 13, by providing the facts supporting the defendants' use of cold storage facilities for the June 14 and June 17 loss incidents. **See** Filing No. 97 - Motion p. 6-7. The defendants reference their responses to Interrogatory Nos. 9-12, which appear to also answer Interrogatory No. 8, with regard to Request for Admission No. 13, and other evidence. **See** Filing No. 99 - Response p. 5-6. The defendants comment that such response renders the plaintiff's motion moot on this issue. *Id.* at 6. Although the plaintiff argues sanctions are appropriate for the late response, the plaintiff does not cite Interrogatory No. 8 in the reply brief for purposes of requesting additional supplementation. **See** Filing No. 102 - Reply p. 1-2. Accordingly, the court will not compel further supplementation with regard to Interrogatory No. 8.

### 2. Interrogatory No. 13

Interrogatory No. 13 states: "Provide contact information for each and every cold storage facility you have used in the past five years, including the purpose served by using that cold storage facility, the amount of product stored, the duration of the storage, and any contact personnel at the cold storage facility." **See** Filing No. 97 - Ex. 2. The plaintiff argues information related to cold storage facilities is relevant to the defendants' attempts

to mitigate their damages. **See** Filing No. 97 - Motion p. 5-6. Specifically, the plaintiff provides some evidence that the defendants contemplated the use of off-site cold storage facilities for the purpose of diminishing the amount of lost product in the event of an emergency. *Id.* Further, the plaintiff argues cold storage facility information, in addition to any used for the incidents in question, is relevant to the defendants' ability to use cold storage and the reasonableness of the defendants' use of cold storage with respect to the incidents in question. **See** Filing No. 102 - Reply p. 4-5.

Originally, the defendants objected "to this interrogatory as asking for information that is overly broad and not reasonably calculated to lead to the discovery of admissible or relevant information." **See** Filing No. 97 - Ex. 2. In the defendants' brief, the defendants argue they had supplied the plaintiff with "all pertinent information regarding [the defendants'] cold storage usage due to the power outages on June 14, 2008, June 17, 2008, and July 17, 2008." **See** Filing No. 99 - Response p. 5. Accordingly, the defendants state they are "at a loss to understand" why the plaintiff requests a response to Interrogatory No. 13. *Id.* Additionally, the defendants provide some evidence suggesting they made reasonable inquiries into using cold storage facilities for the July 17, 2008, incident, but "found that it could not use cold storage facilities on that date because others were full." *Id.* at 6. Furthermore, the defendants argue information related to dates other than the incident dates is not relevant to damages because a list of facilities they may have called is not relevant to the actual facilities they did use or failed to use. *Id.* at 7 (arguing against the five-year time frame with regard to rendering plants).

The court finds the plaintiff has met its burden of showing the requested information is relevant. Although the plaintiff references policy documents and other discovery, the information sought does not appear relevant only to the issue of coverage. Information about the cold storage facilities with whom the defendants had a relationship and could potentially use, even if those facilities were not used with regard to the subject incidents, is relevant to whether the defendants mitigated their damages. Further, the defendants fail to substantiate their objections. For these reasons, the defendants shall supplement their answer to Interrogatory No. 13.

3.     Interrogatory No. 15 and Request for Production Nos. 40-41

Interrogatory No. 15 states: "Describe the documents from which you are able to determine the number of cattle being processed, and the amount of product produced, during each of the losses, including how you are able to determine those amounts from the documents." **See** Filing No. 97 - Ex. 2. The defendants' response states:

> See documents produced under Rule 26, and more specifically, those found at Bates stamped NB/MBRe 0519-0520. See also slaughter production reports and fabrication reports. These reports show the number of cattle slaughtered during the loss and the amount of beef fabricated on those dates. <u>We are in the process of compiling this information from historical records</u>.

**See** Filing No. 97 - Ex. 2 (emphasis added).

Similarly, the plaintiff served Request for Production No. 40 seeking "documents from which you are able to determine the number of cattle being processed, and the amount of product produced, during each of the losses." **See** Filing No. 97 - Ex. 1. The defendants responded without objection by stating, "Defendants are investigating and compiling these and will produce the same." **See** Filing No. 97 - Ex. 1.

The plaintiff notes the defendants fail to object to the interrogatory or requests. The plaintiff argues the defendants' failure to provide timely discovery in response to the interrogatory and requests is delaying resolution of this case. **See** Filing No. 97 - Motion p. 5. In their response, the defendants state they have "attached hereto certain documents that show the number of cattle slaughtered and processed during the months of the losses. This production renders MBRe's request for this information moot. The documents relate to the months of the losses – June and July of 2008." **See** Filing No. 99 - Response p. 3-4 (internal citations omitted).

The defendants' response and attached information appears to complete their answer to Interrogatory No. 15 and Request for Production No. 40. Although the plaintiff argues sanctions are appropriate for the late response, the plaintiff does not cite Interrogatory No. 15 or Request for Production No. 40 in the reply brief for purposes of requesting additional supplementation. **See** Filing No. 102 - Reply p. 1-2. Accordingly, the

court will not compel further supplementation with regard to Interrogatory No. 15 or Request for Production No. 40.

**C.     Requests for Production**

Federal Rule of Civil Procedure 34 allows a party serve any other party with a request to produce and permit the requesting party or its representative to inspect or copy designated documents or electronically stored information "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(A). The request "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). "For each item or category [requested], the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Rule 34(b) further provides that "[t]he party upon whom the request is served shall serve a written response within 30 days after the service of the request." *Id.*

1.     Request for Production Nos. 39 and 43

In Request for Production No. 39, the plaintiff seeks "documents that evidence or support costs paid to cold storage facilities in the past five years to store your product." **See** Filing No. 97 - Ex. 1. Similarly, Request for Production No. 43 seeks "documents that evidence or support money received from rendering plants or facilities in the past five years in exchange for your product." *Id.* The defendants responded to each of these requests by objecting as follows: "Defendants object to this request as asking for information that is overly broad and not reasonably calculated to lead to the discovery of admissible or relevant information." *Id.* The defendants argue there is no relevance to any information outside the dates of the power outage incidents. **See** Filing No. 99 - Response p. 7-8. Further, the defendants state they did not contact any rendering plants for the incidents in question. *Id.* The plaintiff argues cold storage and rendering facility information, in addition to any used for the incidents in question, is relevant to the defendants' ability to use cold storage or a rendering plant during a crisis and the reasonableness of the

defendants' use of cold storage and failure to use a rendering plant, with respect to the incidents in question.  **See** Filing No. 102 - Reply p. 4-5.

As stated above with regard to Interrogatory No. 13, the court finds the plaintiff has met its burden of showing the requested information is relevant.  Information about the cold storage and rendering facilities with whom the defendants had a relationship and could potentially use, even if those facilities were not used with regard to the subject incidents, is relevant to whether the defendants mitigated their damages.  Further, the defendants fail to substantiate their objections.  For these reasons, the defendants shall supplement their responses and production for Request for Production Nos. 39 and 43.

       2.      Request for Production No. 41

The plaintiff served Request for Production No. 41 seeking "documents from which you are able to determine the profits and/or losses you incurred conducting business during each of the losses."  **See** Filing No. 97 - Ex. 1.  The defendants responded without objection by stating, "See Rule 26 disclosure documents.  Defendants are also investigating and compiling these and will produce the same"  **See** Filing No. 97 - Ex. 1.  In their response brief, the defendants contend the motion to compel is moot with regard to this request based on recently produced documents.  **See** Filing No. 99 - Response p. 3-4.  However, the defendants go on to argue the plaintiff is not "entitled to internal records that show [the defendants'] profit and loss calculations or expense reports.  Overall, lost operating profits are not at issue in this case.  Product loss is covered, and it is what NE Beef is claiming.  Thus, only product loss is at issue and is relevant."  **Id.** at 4.  The defendants argue damages will be determined by multiplying the "pounds spoiled" by the "USDA market price of cattle per pound."  **Id.**

By contrast, the plaintiff argues the manner in which damages are to be calculated under the policies is different from the defendants' simplified multiplication.  **See** Filing No. 102 - Reply p. 3.  Specifically, the plaintiff argues the defendants are "entitled only to recover their costs incurred through raw materials and labor expended."  **Id.** (citing policy language).  The plaintiff acknowledges that lost profits is not a claim being made by the

defendants, but argues the same types of information that could be used to determine lost profits would be used to determine damages in this case. *Id.* at 3-4.

The court finds the plaintiff has met the threshold burden of showing the documents sought in the request are relevant. Furthermore, the defendants failed to object to the request until such time for objections was well past. Accordingly, the defendants shall supplement their production with regard to Request for Production No. 41.

### 3. Request for Production Nos. 44 and 45

Request for Production Nos. 44 and 45 seek "copies of any disaster recovery [or contingency] plan in effect during the periods of any losses at issue in this litigation, including any preceding or subsequent versions of the same disaster recovery plan that shows revisions or expansions." **See** Filing No. 97 - Ex. 1. The defendants responded to these requests by objecting as follows.

> Defendants object to that part of this request asking for information about other versions of Defendant's SOP because such request is overly broad and not reasonably calculated to lead to the discovery of admissible or relevant information. Prior or subsequent versions of the SOP other than the one in effect at the time of the losses would not tend to prove or disprove any of the damages incurred in this lawsuit. However with regard to a request for the SOP in effect at the time of the losses, see defendants' answer to Interrogatory No.9 and identified document referenced therein.

**See** Filing No. 97 - Ex. 1.

The defendants state they have supplied the plaintiff with the SOP, which addresses suspected meat contamination, rather than the power outage situations at issue. **See** Filing No. 99 - Response p. 9, 11-12. The defendants argue that without evidence the defendants failed to comply with the SOP, it is not relevant. *Id.* at 11. Furthermore, the defendants contend prior years' SOPs cannot possibly have any relevance to the number of cattle or boxes of beef they lost during the power outages at issue. *Id.* at 9-10. The defendants suggest the requests may be relevant to a coverage dispute, but are not relevant to the amount of damages in this case. *Id.* at 9-12.

The plaintiff has met the burden of showing the requests seek relevant production. The plaintiff may not be able to show the plan, if followed, or a different plan, if used would have prevented any of the damages alleged by the defendants. However, evidence of such a plan or plans and whether the defendants acted reasonably in response to the power outages, with their knowledge and experience, may bear on the amount of damages to be awarded in this case. The defendants fail to substantiate any other objections supporting their refusals to provide complete production in response to the requests at issue. Accordingly, the defendants shall provide supplemental responses to the plaintiff's Request for Production Nos. 44 and 45.

### D.   Sanctions

Under Fed. R. Civ. P. 37(a), the court must require the defendants to pay reasonable expenses associated with the discovery at issue. Specifically, Fed. R. Civ. P. 37(a)(5)(A) provides:

> If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii)   the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii)  other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

The defendants' failure to provide complete discovery responses required the plaintiff to file the motion to compel. The parties do not dispute they attempted, in good faith, to resolve their differences. The court shall, after the defendants have a chance to respond, grant the plaintiffs reasonable expenses for filing such motion, unless the

defendants show substantial justification for the failure to provide discovery responses or other circumstances making an award unjust.

**E.     Motion for Extension of Discovery Deadlines**

The plaintiff seeks an extension of the current discovery deadlines due to the parties' disputes described in the motion to compel. **See** Filing No. 108. Specifically, the plaintiff requests a six-week extension of time from March 1, 2011, to April 15, 2011, or, if later, six weeks after the defendants provide required discovery. *Id.* The plaintiff's request may also delay trial. However, trial has not yet been scheduled. The court planned to schedule trial during the upcoming March 10, 2011, telephone conference. **See** Filing No. 96.

The defendants oppose the extension of time. **See** Filing No. 111. The defendants argue the plaintiff has more than enough discovery to calculate the more than $3.9 million damages owed. *Id.* at 1. Further, the defendants seek to expedite trial to occur this summer and receive the amounts owing. *Id.* The defendants contend the plaintiff fails to show cause for the extension or delineate the precise discovery needed. *Id.* at 2.

The court finds the plaintiff has met the burden. The defendants may need some time to provide the discovery compelled herein. Further, the plaintiff states additional time is needed for the plaintiff and its experts to review the materials. Finally, the brief extension of time should not delay trial beyond the time line preferred by the defendants. Accordingly, the plaintiff's motion is granted as set forth below. Upon consideration,

**IT IS ORDERED:**

1.     The plaintiff's Motion to Compel Production of Documents and Answers to Interrogatories and Requests for Admission (Filing No. 97) is granted. However, the defendants need not provide supplemental answers and responses with regard to Interrogatory Nos. 8 and 15, and Request for Production No. 40.

2.     The defendants shall have to **on or before March 4, 2011**, to serve supplemental answers and responses, as set forth herein to Interrogatory No. 13, Request for Admission Nos. 9, 10, 14-17, 19, and 20, and Request for Production Nos. 39, 41, 43,

44, and 45, and to show cause why sanctions, including the award of attorneys' fees under Rule 37(a), should not be imposed.

      3.      The plaintiff's Motion for Extension of Discovery Deadlines (Filing No. 108) is granted.

      4.      The parties shall have an extension of time until **April 15, 2011**, to complete discovery regarding damages.

      5.      The telephone planning conference remains scheduled for **March 10, 2011, at 10:00 a.m.**, for the purpose of scheduling a pretrial conference and to schedule a damages hearing before Chief Judge Bataillon. Counsel for the plaintiff shall initiate the telephone conference.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 22nd day of February, 2011.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.